**William BAIRD, independent candidate for United States Senator, and Susan Vogel, a registered independent voter, Plaintiffs,**

v.

**John F. X. DAVOREN, in his capacity as State Secretary of the Commonwealth of Massachusetts, Defendant.**

**SOCIALIST WORKERS PARTY et al., Plaintiffs,**

v.

**John F. X. DAVOREN, as Secretary of the Commonwealth of Massachusetts, with his Agents and Successors in Office, Defendants.**

**Civ. A. Nos. 70–959, 70–990.**

United States District Court,
D. Massachusetts.

Feb. 17, 1972.

Supplemental Opinion April 4, 1972.

Evan T. Lawson, Stephen K. Glickman, Glickman, Lawson & Tenney, Boston, Mass., for plaintiffs Baird and others.

Allan R. Rosenberg, Putnam, Bell & Russell, Boston, Mass., for plaintiffs Socialist Workers Party and others.

Robert J. Condlin, James P. Kiernan, Asst. Attys. Gen., Boston, Mass., for defendants.

Stanley R. Lapon, Cambridge, Mass., for intervenors Socialist Labor Party and Lawrence Gilfedder.

Before ALDRICH, Circuit Judge, JULIAN and MURRAY, District Judges.

### OPINION

FRANK J. MURRAY, District Judge.

These two actions, consolidated for trial, seek to have Sections 1 and 6 of Chapter 53 of the Massachusetts General Laws (see Appendix A) declared unconstitutional as violating the equal protection clause of the Fourteenth Amendment to the United States Constitution. Sections 1 and 6 set forth the procedures for obtaining a place on the ballot in a Massachusetts state election.

The plaintiff Baird was at the time of filing the petition an independent candidate for the office of United States Senator. His co-plaintiff, Susan Vogel, sued on her own behalf and on behalf of the class of all registered voters of Massachusetts who wish to vote for independent candidates for elective office. The Socialist Workers Party, as alleged in the complaint, is a "voluntary unincorporated association of persons devoted to the ideals of socialism through participatory democracy". Joined as co-plaintiffs are Michael Kelly, Toba Leah Singer, and Peter Camejo, respectively candidates for election in the general election of November 3, 1970 for the offices of Governor, Attorney General, and United States Senator under the aegis of the Socialist Workers Party. In addition, Lawrence P. Trainor is a co-plaintiff suing on his own behalf and on behalf of all other registered voters similarly situated who desire to vote for the candidates of the Socialist Workers Party. In the order of the court of July 9, 1971 consolidating these cases, the defendants were directed to notify all parties (other than the Republican and Democrat parties) which appeared on the ballot for United States Senator in the last election of the pendency of this suit and of the opportunity to intervene by motion filed within thirty days of receipt of notice. Thereafter, the Socialist Labor Party and Lawrence Gilfedder, Socialist Labor Party candidate for United States Senator in the last election, intervened in the suit.

The jurisdiction of the court is invoked under 28 U.S.C. §§ 1343(3) and (4), 2201, 2202, and 42 U.S.C. §§ 1981, 1983, 1988. Plaintiffs seek to redress the alleged deprivation under color of state law of rights guaranteed them by the First, Ninth and Fourteenth Amendments to the United States Constitution.

Under the election laws of Massachusetts, nominees of a political party or other group have access to the ballot, if named

(a) by a political party, defined by chapter 50, section 1, of the General Laws, whose candidates received at least three per cent of the vote for governor in the preceding biennial election. Such party may nominate candidates for the ballot by primary election, party caucus or convention. The Democrat and Republican parties are examples of such political parties (hereinafter political parties).

(b) by nomination papers signed by qualified voters equal in number to not less than three per cent of the entire vote for governor at the preceding biennial election, as provided in chapter 53, section 6, or by a convention of delegates chosen by qualified voters at caucuses held in each ward or town,

as provided in chapter 53, section 2. If the nomination is by nomination papers, it is provided by chapter 53, section 6, that no more than one third of the signatures shall be from any one county. Such a nominee is commonly called "an independent" candidate, and his group, an independent party (hereinafter independent parties).

(c) by a party (described in chapter 53, section 1) whose candidate for governor at the three preceding biennial elections has polled a number of votes equal to one tenth of one per cent of the total number cast. The intervenor, Socialist Labor Party, is such a party (hereinafter minor parties).

The cases came on to be heard on the motions of the defendants for summary judgment, and were argued by counsel for plaintiffs, defendants and intervenors. Upon consideration of the arguments and briefs, the court concludes, for the reasons set out hereafter, that in accordance with the claims of plaintiffs Baird and Socialist Workers Party (1) the favored status under the Massachusetts election laws of minor parties discriminates invidiously against candidates and parties required to secure signatures not less than three per cent in number of the total vote cast for governor at the preceding election and (2) the statutory limitation of signatures on nominating petitions for state-wide offices to not more than one third from any one county violates the fourteenth amendment, and that contrary to plaintiffs' claim (3) there is no violation of the federal constitution in the three per cent signature requirement of chapter 53, section 6.

### History of Amendments to Chapter 53, Sections 1 and 6

■ The Massachusetts election laws were extensively revised in 1939. Plaintiffs have argued that because new nomination requirements· for candidates of both minor parties and independent parties were enacted in that year, they should be regarded as part of a single, indivisible legislative package. A brief examination of the history of this legislation however, will dispose of that contention. By a bill enacted on May 10, 1939, chapter 53, section 6 was amended to provide that nominations for statewide offices by any parties other than political parties were to be made by nominating petitions signed by a number of voters not less than three per cent of the number of votes cast for governor in the last biennial state election. (See Appendix B.) At the time of the passage of the bill, no special provision was made for the so-called "minor parties", and Governor Saltonstall was advised that the new law would probably destroy several small minority parties. The Governor sent a message to the Legislature on June 27, 1939, requesting that the statute be further amended to preserve these small parties (see Appendix C). On July 19 the Legislature amended chapter 53, section 1, to allow relief from the three per cent signature requirement to parties which had obtained one tenth of one per cent of the votes for governor in the last three biennial state elections. (See Appendix D.)

Thus it is clear that the three per cent requirement was prior in time to the exception for minor parties and was intended to be the general requirement. It is also clear that the exception for minor parties was enacted primarily if not solely to save certain small parties existing at the time of the passage of these acts from extinction. It is with this history in mind that plaintiffs' claims must be weighed. In the following discussion, the court will assume the three per cent requirement is the general rule, and the provision for minor parties an exception.

### Discussion

#### I

The right of citizens to associate for the advancement of their political beliefs and the right of qualified voters to choose their public servants through the electoral process have long been firm tenets of our political faith. These rights are enshrined in the first amend-

ment to the Constitution. Indeed, they are of the essence of our governmental scheme, for unless they are preserved intact, other rights, even the most basic, cannot be secure. For this reason, it has been held that "our Constitution leaves no room for classification of people in a way that unnecessarily abridges [these] rights". Wesberry v. Sanders, 376 U.S. 1, 17–18, 84 S.Ct. 526, 535, 11 L.Ed.2d 481 (1964); Sweezy v. New Hampshire, 354 U.S. 234, 250, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957).

Having regard for these rights, however, a state may impose reasonable regulations upon its own electoral process. Access to the ballot need not be wholly unrestricted to insure compliance with the federal constitution. Lassiter v. Northampton County Board of Electors, 360 U.S. 45, 50, 79 S.Ct. 985, 3 L. Ed.2d 1072 (1959). Cf. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). For example, the requirements that political parties shall nominate candidates through primary elections or party caucuses or conventions, or that independent candidates be nominated by petition, have been held to be reasonable restraints upon access to the ballot. United States v. Classic, 313 U.S. 299, 314–18, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941); Briscoe v. Kusper, 435 F.2d 1046, 1054 (7th Cir. 1970). Such restraints serve to highlight both issues and alternative proposals presented to the electorate, and tend to prevent the informational aspect of the electoral process from being overburdened and obfuscated by groups having little or no popular support. Yet because of the importance of these rights, any restraint upon them by state election laws must be scrutinized carefully whenever it is claimed the laws themselves discriminate invidiously among political groups or abridge unduly the right of association and the right to vote. Wesberry v. Sanders, *supra*; Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944); Socialist Workers Party v. Rockefeller, 314 F.Supp. 984 (S.D.N.Y. 1970).

In evaluating state election statutes claimed to be discriminatory, the court must conduct a critical and probing search for the true purpose and effect of the classification imposed by the statutes. If, when the state's election laws are viewed in their totality, they restrict the rights of some groups to gain access to the ballot or dilute or debase the right to vote, some other nondiscriminatory "compelling state interest" must be shown to justify such restraints. Kramer v. Union Free School District, 395 U.S. 621, 626–627, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); Williams v. Rhodes, 393 U.S. 23, 31, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed. 2d 393 (1961); Kotch v. Board of River Port Pilot Commissioners, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947). On the contrary, if scrutiny reveals that the election statute is a measure which extends rather than constricts the franchise, then any reasonable explanation for the classification will suffice.

The Supreme Court has said that the equal protection clause of the fourteenth amendment allows the states much latitude, and a distinction drawn by a state statute will be set aside as violative of that clause only if "based on reasons totally unrelated to the pursuit of that goal". McDonald v. Board of Election Commissioners, 394 U.S. 802, 808, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969) (challenge to failure of the state of Illinois to extend absentee ballots to incarcerated prisoners); Katzenbach v. Morgan, 384 U.S. 641, 657, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966) (challenge to abolition of literacy tests as a condition of suffrage solely for persons educated in United States flag schools pursuant to Section 4(e) of the Voting Rights Act of 1965, 42 U.S.C. § 1973b(e)). It should be noted, however, that these cited cases involved claims of discriminatory classifications arising from reform efforts to expand the electoral franchise to groups who would be otherwise excluded. The breadth of the "any reasonable explanation" test rests on the evident reluctance

of the Court to interfere with or obstruct state activities which are basically benign attempts to expand the franchise. *Cf.* Dandridge v. Williams, *supra.* The Court has said that a "statute is not invalid under the Constitution because it might have gone further than it did", Roschen v. Ward, 279 U.S. 337, 339, 49 S.Ct. 336, 73 L.Ed. 722 (1929), that a legislature need not "strike at all evils at the same time", Semler v. Oregon St. Bd. of Dental Examiners, 294 U.S. 608, 610, 55 S.Ct. 570, 571, 79 L.Ed. 1086 (1935), and that "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind", Williamson v. Lee Optical Co., 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955).

■■ Where the element of reform is absent, however, the court may apply a more rigorous equal protection test to state action which extends a right unequally, even if the unequal treatment was not intended, and the state was not compelled to grant the right in the first instance. *See* Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (state could not effectually deny appellate review to indigent defendants due to their inability to purchase trial transcripts). More clearly, a state statute whose effect was to extend the vote to white but not to black illiterates could not be justified on the ground that it extended rather than denied a right. Guinn v. United States, 238 U.S. 347, 35 S.Ct. 926, 59 L.Ed. 1340 (1915). Thus it appears that in determining whether a strict or liberal equal protection standard is to be applied, the Court will carefully weigh the beneficial nature of the state action.

Defendants and the intervenor Socialist Labor Party have urged the court to apply that standard which looks only to determine if there is any reasonable connection between the distinction drawn by the statute and the statutory purpose. Specifically, they have urged that the Legislature could reasonably facilitate access to the ballot in the interest of encouraging "stability and continuity" for parties which have demonstrated a certain minimum level of voter interest over a period of years. Defendants also contend that it is not unreasonable "for the Legislature to encourage attempts at political structural reform and at the same time neglect to encourage those who would seek to resolve the popular issue of the day". Finally, it is argued that the Socialist Labor Party has served a peculiarly catalytic function in the political life of Massachusetts and the Legislature could legitimately recognize the worth of that contribution.

Examination of the legislative history of the exception for minor parties reveals that its enactment was not the sort of reform movement which has led the Supreme Court to apply the more liberal equal protection test. As the message of Governor Saltonstall clearly shows, the discrimination challenged here arose from an attempt to mitigate standards of general application for the benefit of certain parties in existence at the time of the general electoral reform. Thus the exception for minor parties was not a reform measure at all; it was special legislation to secure the political *status quo* as of 1939. The Supreme Court has held that such an attempt to freeze the *status quo* cannot be a reasonable regulation of the electoral process. *Cf.* Jenness v. Fortson, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971); Williams v. Rhodes, 393 U.S. 23, 32, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). Beyond this, the court is unable to find any rational basis for the distinction between minor parties and independent parties. The reasons suggested by the defendants and the intervenor Socialist Labor Party are wholly unpersuasive.

Defendants have argued that the Legislature can legitimately distinguish between parties attempting political structural reform or serving as an intellectual catalyst, on the one hand, and those seeking "to resolve the popular issue of the day". Yet there was no evidence before the court that the parties which are beneficiaries of the statutory exception have been unique catalysts for ideas,

or have made such contributions to political structural reform as to warrant their special protection. The only evidence is that these parties have attracted a tiny fraction of the vote in a large number of biennial state elections. While it is conceded that the state may reasonably regulate access to the ballot, a distinction based solely on the age of a party cannot reasonably be said to be related to a process for the resolution of political issues. The age of a political organization is no cause for special consideration in the electoral process; age can as readily connote senescence as current political wisdom or acumen.

■ For these reasons, the court concludes that the provisions of section 1, which grant special treatment to minor parties, violate the equal protection clause of the Fourteenth Amendment to the United States Constitution.

## II

The plaintiffs have urged the court to strike both the three per cent requirement of section 6, and the one tenth of one per cent requirement of section 1, if a violation of the equal protection clause is found. In their allegations, plaintiffs argue that under the present scheme only twice in thirty-three years have independent candidates qualified for positions on the ballot and no groups have risen to the favored minor party status.

As stated earlier in this opinion, the history of the 1939 election law reforms indicates clearly that the three per cent signature requirement for nomination by petition in section 6 was the general rule. If the exception for minor parties is stricken, the three per cent requirement will apply to all parties, other than a political party as defined in chapter 50, section 1. Thus the court finds that the three per cent requirement for nominating petitions standing by itself does not violate the equal protection clause. Beyond this, however, there are several recent decisions where the Supreme Court has upheld state election laws distinguishing between existing political parties, on the one hand, and new or independent parties whose nominees are required to obtain signatures on nominating petitions from a designated percentage of voters in order to secure a place on the ballot. In Jenness v. Fortson, *supra*, the Court held that the Georgia election law which required new or independent parties to obtain the signatures of five per cent of the eligible voters in the preceding election in order to secure a place on the ballot was not violative of the equal protection clause. The Court distinguished Williams v. Rhodes, *supra*, saying that the Georgia statute provided for write-in votes, did not require every candidate to be the nominee of a political party, did not fix an unreasonably early filing deadline, and did not require the establishment of elaborate primary election machinery. It is not alleged that the Massachusetts election statutes run afoul of any of these grounds of the Court's decision in *Williams*. In addition, the Court in *Jenness* said:

> There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization and its candidates on the ballot—the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election.

*Id.*, 403 U.S. at 442, 91 S.Ct. at 1976. See also Jackson v. Ogilvie, 325 F.Supp. 864 (N.D.Ill.1971) (requiring more than five and less than eight per cent of the total votes cast in the last election), aff'd, 403 U.S. 925, 91 S.Ct. 2247, 29 L.Ed.2d 705 (1971); Beller v. Kirk, 328 F.Supp. 485 (S.D.Fla.1971) (requiring signatures of three per cent of the number of registered voters), aff'd *sub nom.* Beller v. Askew, 403 U.S. 925, 91 S.Ct. 2248, 29 L.Ed.2d 705 (1971); Lyons v. Davoren, 402 F.2d 890, 893 (1st Cir. 1968), cert. denied, 393 U.S. 1081, 89 S.Ct. 861, 21 L.Ed.2d 774 (1969).

■ In the light of these decisions, the requirement of section 6, that new or independent parties obtain the signatures on nominating petitions of at least three

per cent of the voters for the office of governor in the last election is not violative of the equal protection clause.

### III

Section 6 limits the number of signatures which can be obtained on a nominating petition from a single county to one third of the total. Plaintiffs claim that this requirement denies their right to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution.

██ It is well settled that state requirements regulating the electoral process the effect of which is to dilute the votes of some members of the electorate cannot be sustained. In Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), the Court said:

[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.

*Id.* at 555, 84 S.Ct. at 1378.

The Massachusetts statute which the plaintiffs challenge here has the effect of discriminating between voters in the populous and sparsely settled counties of the state, and limits the rights of voters from the most populous counties. It has been held that any state interest in a showing of state-wide support for a new political party or candidate must yield to the "one man, one vote basis of our representative government". Moore v. Ogilvie, 394 U.S. 814, 819, 89 S.Ct. 1493, 1496, 23 L.Ed.2d 1 (1969). Gray v. Sanders, 372 U.S. 368, 381, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963). *See also* Socialist Workers Party v. Hare, 304 F.Supp. 534 (E.D.Mich.1969) (striking a distribution requirement prohibiting more than thirty-five per cent of signatures on nominating petitioners from a single county).

██ Additionally, the Seventeenth Amendment to the Constitution provides in part that "[t]he Senate of the United States shall be composed of two Senators from each State, elected by the people thereof, for six years". That amendment must be held to prohibit the dilution of the votes of any persons eligible to vote for United States Senator.

Since the distributional requirement of section 1 has the effect of discriminating between voters, it violates the mandate of the equal protection clause that citizens must be treated equally in the exercise of their political rights through the franchise.

### IV

The final question is whether the clauses of chapter 53, sections 1 and 6, which the court declares to be unconstitutional can be severed from the Massachusetts election laws without invalidating the entire statutory scheme.

██ The general rule on separability, when part of a statute or some of its applications are declared to be constitutionally invalid is that the rest of the statute shall stand intact if the valid provisions or applications are capable of being given effect standing alone, and if the Legislature would have intended the statutes to stand with the invalid provisions stricken out. *See generally* Stern, Separability and Separability Clauses in the Supreme Court, 51 Harv.L.Rev. 76 (1937). The Supreme Court in Dorchy v. Kansas, 264 U.S. 286, 44 S.Ct. 323, 68 L.Ed. 686 (1924) said:

Provisions within the legislative power may stand if separable from the bad. [citations omitted] But a provision, inherently unobjectionable, cannot be deemed separable unless it appears both that, standing alone, legal effect can be given to it and that the legislature intended the provision to stand, in case others included in the act and held bad should fall.

*Id.* at 289–290, 44 S.Ct. at 324. In addition, "[t]he task of determining the intention of the state legislature in this respect . . . rests primarily upon the state court". *Id.* at 290, 44 S.Ct. at 325.

The courts of Massachusetts have not spoken upon the separability of the state's election laws. It appears, however, that the two conditions for separa-

bility are met, and this court will assume that the Massachusetts Legislature would intend the remaining parts of the statute to stand intact.

### Conclusion

Accordingly, it is hereby determined that:

A. the provisions of Massachusetts General Laws Chapter 53, Section 1, which authorize nominees of minor parties to have access to the ballot on more favorable terms than nominees of independent parties violate the equal protection clause of the Fourteenth Amendment to the United States Constitution.

B. the provisions of Massachusetts General Laws Chapter 53, Section 6, which limit the number of signatures on nominating petitions for state-wide offices to one third at most from a single county violate the equal protection clause of the Fourteenth Amendment to the United States Constitution.

C. the provisions of Massachusetts General Laws Chapter 53, Section 6, which require that the number of signatures on nominating petitions for state-wide offices equal at least three per cent of the votes in the last gubernatorial election do not violate the United States Constitution.

It is ordered that a declaratory judgment shall enter in accordance herewith.

### APPENDIX A

Massachusetts General Laws

Chapter 53

Section 1. *Parties entitled to make nominations.*

At any primary, caucus or convention held under this chapter, each party having the right to participate in or hold the same may nominate as many candidates for each office for which it has the right to make nominations therein as there are persons to be elected to that office, and no more. A party which has not polled at the preceding state or municipal election the vote required to make it a political or municipal party as defined in section one of chapter fifty, *but which at the three preceding biennial elections has polled in the commonwealth, or in any district, county, city, town or ward, respectively, a number of votes for governor equal to one tenth of one per cent of the total number of ballots cast,* may hold a caucus or convention and make a nomination for office so to be filled. A party which makes one or more nominations shall be entitled to have the name of each of its candidates printed on the ballot to be used at the ensuing election; but, unless the nomination is made by direct plurality vote in a primary or in several caucuses held in more than one ward or in more than one precinct or group of precincts, a certificate of nomination must be filed as provided in section five. As amended St.1939, c. 371. (Emphasis added.)

Section 6. *Nomination papers; number of signatures.*

Nominations of candidates for any offices to be filled at a state election may be made by nomination papers, stating the facts required by section eight and *signed in the aggregate by not less than such number of voters as will equal three per cent of the entire vote cast for governor at the preceding biennial state election in the commonwealth at large or in the electoral district or division for which the officers are to be elected.* In the case of offices to be filled by all the voters in the commonwealth, *no more than one third of the required number of signatures shall be from any one county.* Nominations of candidates for offices to be filled at a city or town election, except where city charters or general or special laws provide otherwise, may be made by like nomination papers, signed in the aggregate by not less than such number of voters as will equal one per cent of the entire vote cast for governor at the preceding biennial state election in the electoral district or division for which the officers are to be elected, but in no event

by less than twenty voters in the case of an office to be filled at a town election; provided, however, that no more than fifty signatures of voters shall be required on nomination papers for such town office. At a first election to be held in a newly established ward, the number of signatures of voters upon a nomination paper of a candidate who is to be voted for only in such ward shall be at least fifty. [As amended St.1936, c. 101; St.1939, c. 191; St.1941, c. 266; St.1943, c. 50; St.1943, c. 334, § 2; St.1960, c. 224]. (Emphasis added.)

## APPENDIX B

Chapter 191 of the Massachusetts Acts of 1939, enacted May 10, 1939, amending Mass.Gen.Laws Chapter 53, Section 6, provided:

Nominations of candidates for any offices to be filled by all the voters of the commonwealth may be made by nomination papers, stating the facts required by section eight and signed in the aggregate by not less than such numbers of voters as will equal three per cent of the entire vote cast for governor at the preceding biennial state election. . . .

## APPENDIX C

It has come to my attention that the passage of Chapter 191 of the acts of the current year presents to existing minority parties, so-called, a serious if not an insurmountable burden to maintain their existence in future elections.

Under the law, prior to the passage of said Chapter 191, serious abuses have grown up whereby prospective candidates for office while purporting to represent a faction of the electorate were, in fact, merely political opportunists and have used the existing law to force themselves upon the electorate. To cure this widespread abuse the above referred act of this year was passed. This act, as previously stated, in my opinion places too onerous a burden on existing minority parties and I, therefore, submit for your consideration the accompanying draft of an act to continue in existence such parties.

Massachusetts House Documents, 1939, No. 2444.

## APPENDIX D

Chapter 371 of the Massachusetts Acts of 1939, enacted July 19, 1939, amending Mass.Gen.Laws Chapter 53, Section 1, provided:

that the following words in lines 10–13 of M.G.L. ch. 53, § 1 be stricken:

the number of voters required to nominate by nomination papers a candidate for an office which is to be filled by election therein, may hold a caucus or convention and make a nomination for the office so to be filled.

that the following words be substituted in their place:

one tenth of one per cent of the total number of ballots cast, may hold a caucus or convention and make a nomination for the office so to be filled.

## SUPPLEMENTAL OPINION

### PER CURIAM.

The plaintiffs Socialist Workers Party et al, in Civil No. 70–990, petition for rehearing alleging the court failed to consider and decide certain issues presented in their amended complaint, as follows: (1) whether the Socialist Workers Party and its candidates are unconstitutionally discriminated against by the caucus and convention requirements of M.G.L. ch. 53, §§ 2 and 117, (2) whether they are unconstitutionally discriminated against by the system for nomination of candidates of political parties by the pre-primary convention and primaries provisions, and the election machinery in connection therewith, set forth in ch. 52, § 9, and ch. 53, §§ 2 and 54 (and § 41), and (3) whether the system for placing candidates on the ballot provided by ch. 50, § 1, ch. 52, § 9, ch. 53, §§ 1, 2, 6, 54 and 117, taken as a whole, violates plaintiffs' First and Fourteenth Amendment rights. We acknowledge that there was no discussion in our opinion of the impact of the con-

vention and caucus requirements, but in our consideration of these issues we nevertheless conclude that no constitutional questions ripe for adjudication are presented.

█ At the outset of our examination of the petition for rehearing we reaffirm the holding in our opinion of February 17, 1972 that ch. 53, § 6, authorizing nominations by petitions signed by voters equal in number to three per cent of the votes cast for governor in the last biennial election is constitutional. We emphasize, moreover, that section 6 provides an alternative means of access to the ballot that is independent of the caucus and convention provisions and is capable of being given full effect without reference to them.

The plaintiffs, however, suggest several grounds to support their contention that section 6 is applicable only to independent candidates, and that nominations of candidates of every party must be through the caucus and convention provisions.

In the first place, we recognize with plaintiffs that section 6 does refer only to candidates and not to parties. But we do not accept plaintiffs' contention that for that reason a party such as the Socialist Workers Party may nominate *solely* through the caucus and convention provisions of the election laws. Section 6 is silent as to parties. It would not be unnatural to interpret the silence as meaning that any candidate, regardless of whether he is affiliated with a new party, may be nominated pursuant to its provisions. Where the section does not specifically proscribe nomination of new party candidates through nomination papers, we will not so construe it, thus giving independent candidates undue advantages over others, and thereby creating possible constitutional infirmities. To the extent that plaintiffs' objection is simply that candidates so nominated may not attach to their names on the ballot a party designation, if indeed that be the rule, we see nothing amounting to invidious discrimination.

Plaintiffs also argue that the caucus and convention requirements are mandatory for new parties. But examination of the Massachusetts election laws leaves the question who may nominate candidates by means of caucus and convention provisions obscure and unclear to say the least. The convention provisions of ch. 53, § 2 are not expressly limited to certain parties, but § 1 of that chapter, with the heading "Parties entitled to make nominations", appears to limit its nominating provisions to political, municipal and "grandfather" parties.[1] In light of § 1, the provisions of § 2 could be interpreted simply as defining how nominations shall be made by parties entitled to make them. So construed, the convention provisions of § 2 would apply only to the parties apparently designated in § 1. In the absence of a decision by the Massachusetts courts holding that the convention and caucus provisions do apply to all parties, including new parties, and that they are the exclusive means by which new parties may place candidates on the ballot, we will not declare such an interpretation of the unclear Massachusetts election laws simply to reach the constitutional questions raised by plaintiffs.

Since we have held that section 6 provides an alternative and independent means of access to the ballot for new parties, no constitutional question is presented by plaintiffs' contention that all the provisions of the election laws must be considered as a whole.

█ If this were a federal statute, we would be inclined to follow the settled rule that a statute is to be so construed that it is constitutional whenever the language will support such a construction, *e. g.*, United States v. Delaware & Hudson, 213 U.S. 366, 407–408, 29 S.Ct. 527, 53 L.Ed. 836 (1909), and we might hold that the convention provisions do not apply to all parties. Such an interpretation would save the statutory scheme from constitutional infirmity, since we have already held that Massachusetts may validly require that

---

I. The earlier decision of this court eliminated the favored status of "grandfather" parties.

candidates other than those of the major parties be nominated by satisfying the section 6 requirements. Since it is a state statute that is before us, however, the proper course is to abstain from consideration of the federal questions raised until the Massachusetts courts have had an opportunity to construe the statute. A. F. of L. v. Watson, 327 U.S. 582, 595–599, 66 S.Ct. 761, 90 L.Ed. 873 (1946), Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). If the Massachusetts courts at some later time hold that new parties may nominate only by means of the convention and caucus provisions, plaintiffs may then, of course, raise the questions in this court which they now seek to raise prematurely. *See* England v. Louisiana State Board, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

*Accordingly, the order shall enter denying the petition for rehearing and declaring that the court will retain jurisdiction of the case.*