**COMMUNIST PARTY OF ILLINOIS et al., Plaintiffs-Appellees,**

v.

**STATE BOARD OF ELECTIONS FOR the STATE OF ILLINOIS et al., Defendants-Appellants.**

**No. 74–1950.**

United States Court of Appeals, Seventh Circuit.

Argued April 23, 1975.

Decided June 27, 1975.

Certiorari Denied Nov. 17, 1975. See 96 S.Ct. 394.

William J. Scott, Atty. Gen., Herbert L. Caplan, Asst. Atty. Gen., Chicago, Ill., for defendants-appellants.

Howard Eglit, Chicago, Ill., for plaintiffs-appellees.

Before SWYGERT and TONE, Circuit Judges, and GRANT, Senior District Judge.*

SWYGERT, Circuit Judge.

Plaintiffs, the Communist Party of Illinois, several of its candidates for state office in the November 5, 1974 general election, and a registered voter desiring to vote for these candidates, filed suit for declaratory and injunctive relief against the State Board of Election Commissioners for the State of Illinois [1] seeking to challenge the constitutionality of a section of the Illinois Election Code, Ill.Rev.Stat. ch. 46, § 10–2. This statute requires any political party seeking statewide ballot recognition to submit petitions containing not less than 25,000 signatures of qualified voters, not more than 13,000 of which may be counted from any one county.[2] Plaintiffs sought an order declaring the requirement limiting the number of signatories from any one county void as being unconstitutional, and injunctive relief requiring the defendants to certify plaintiff candidates so that they would be listed on the statewide ballot for the November, 1974 general election.

Initially, the district court entered an order declaring section 10–2 unconstitutional and denying defendants' motion to convene a three-judge court pursuant to 28 U.S.C. § 2281.[3] The court found section 10–2 violative of the Equal Protection and Due Process clauses of the Fourteenth Amendment in that it "discriminates against voters of the most populous county of the state in favor of voters in the less populous counties." The court found the claim that the section is not unconstitutional to be "wholly

---

* Senior District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

1. Members of the Board are also sued, both individually and in their capacities as members of the State Board of Elections.

2. The statute provides in relevant part:

   Any group of persons hereafter desiring to form a new political party throughout the State, or in any political subdivision greater than a county and less than the State, shall file with the State Board of Elections a petition as hereinafter provided . . . . Any such petition for the formation of a new political party throughout the State . . . shall declare as concisely as may be the intention of the signers thereof to form such new political party in the State, or in such district or political subdivision; shall state in not more than 5 words the name of such new political party; shall contain a complete list of candidates of such party for all offices to be filled in the State, or such district or

political subdivision as the case may be, at the next ensuing election then to be held; and, if such new political party shall be formed for the entire State, shall be signed by not less than 25,000 qualified voters: Provided, that no more than 13,000 signatures from the same county may be counted toward the required total of 25,000 signatures.

3. Title 28 U.S.C. § 2281 provides:

   An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.

without merit in light of a prior decision by a three-judge panel of this court declaring this same statutory provision unconstitutional in *Communist Party v. Ogilvie*, [357 F.Supp. 105 (N.D.Ill.1972)], and other decisions declaring similar signature distribution requirements unconstitutional." [4] In response to this order, plaintiffs moved for injunctive relief. In a second order, the district court entered a preliminary injunction [5] directing defendants to certify or cause to be certified plaintiff candidates for the November, 1974 election "if the only grounds for non-certification is failure to comply with the county distribution signature requirement."

Defendants appeal from both of these orders.[6] They contend that the issue of the constitutionality of section 10–2 has not been rendered "wholly without merit" by previous decisions, and that the district judge was therefore required by 28 U.S.C. § 2281 to convene a three-judge court in order to enjoin the enforcement of this state statute. They further contend that section 10–2 represents a non-arbitrary attempt by the State of Illinois to assure that residents throughout Illinois have "equal opportunity to be involved in statewide political party activities," and to assure that "multifarious political associations with little or no popular support do not bemuse the electoral process." They say section 10–2 does not, therefore, offend the Fourteenth Amendment.

## I

In our view, the issue of whether the district court in this case should have convened a three-judge court prior to issuing the preliminary injunctive order directing the Board not to enforce section 10–2 against these plaintiffs in the November, 1974 general election is moot. That election is over; plaintiffs and defendants here have little stake in litigating the technical question of whether the relief obtained in connection with that election had a proper jurisdictional base. Plaintiff candidates were in

4. *Citing Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); *Socialist Workers Party v. Hare*, 304 F.Supp. 534 (E.D.Mich. 1969); *Baird v. Davoren*, 346 F.Supp. 515 (D.Mass.1972); *Socialist Labor Party v. Rhodes*, 318 F.Supp. 1262 (S.D.Ohio 1970); *Socialist Workers Party v. Rockefeller*, 314 F.Supp. 984 (S.D.N.Y.1970).

5. The original declaratory order purports to grant plaintiffs' "motion for a preliminary injunction." It does no more than declare section 10–2 unconstitutional, however, and does not direct any state officers to take any specific action or to refrain from taking action. This initial order is dated September 11, 1974 as is the minute order which accompanies it. The second, or preliminary injunction order, is also dated September 11, 1974, but is accompanied by and attached to a notice of motion and motion which are file stamped September 12, 1974. The minute order accompanying these papers is dated September 12, 1974 as well. Thus, the injunctive order appears to have been prepared by plaintiffs and signed (after limiting alterations) by the district judge subsequent to the entry of the declaratory order and in reliance upon that original order.

The order granting injunctive relief reads:
PRELIMINARY INJUNCTION
Having declared the county distribution signature requirement of Section 10–2 of Illi-

nois Revised Statutes, Ch. 46, Sec. 10–2 (1973) unconstitutional as violative of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the Constitution of the United States by order of this Court, dated September 11, 1974, it is hereby ordered that defendants, their agents, and employees certify to the county clerk of each county in Illinois the plaintiff candidates as duly nominated candidates for election to state office in the general election to be held on November 5, 1974, if the only grounds for noncertification is failure to comply with the county distribution signature requirement.
WILLIAM J. LYNCH,
Judge, United States District Court
Dated: September 11, 1974.

6. The notice of appeal refers to "the order entered by District Court Judge William J. Lynch on September 11, 1974 declaring the county signature requirement of § 10–2 of the Illinois Election Code unconstitutional and granting a preliminary injunction," apparently treating the two orders as a single, consolidated order.

fact certified and listed on the November ballot. The past cannot be retraced. A decision on the section 2281 question would be purely advisory at this point and would not affect the rights of these litigants insofar as the injunctive order is concerned.[7] *See Oil Workers Unions v. Missouri*, 361 U.S. 363, 366–68, 80 S.Ct. 391, 4 L.Ed.2d 373 (1960); *North Carolina v. Rice*, 404 U.S. 244, 245–46, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971).

## II

The heart of this case is the district court's order declaring section 10–2 unconstitutional. This determination was based on the reasoning contained in a previous decision of a three-judge district court in this circuit declaring section 10–2 unconstitutional as violative of the equal protection provision of the Fourteenth Amendment, *Communist Party v. Ogilvie, supra*, and on the rationale of the Supreme Court's decision in *Moore v. Ogilvie*, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969) holding a predecessor of section 10–2 unconstitutional on the same ground. We believe this determination was correct.

In *Moore* the Supreme Court had before it a statutory provision requiring certain independent candidates, in order to be certified for the statewide ballot in Illinois, to obtain the signatures of 25,-000 qualified voters, including signatures of two hundred voters from each of at least fifty of the one hundred and two Illinois counties. This provision had been specifically upheld in a previous decision of the Supreme Court in *MacDougall v. Green*, 335 U.S. 281, 69 S.Ct. 1, 93 L.Ed. 3 (1948). Expressly overruling *MacDougall* as being "out of line with our recent apportionment cases," the Court in *Moore* framed the equal protection problem in these terms:

It is no answer to the argument under the Equal Protection Clause that this law was designed to require statewide support for launching a new political party rather than support from a few localities. This law applies a rigid, arbitrary formula to sparsely settled counties and populous counties alike, contrary to the constitutional theme of equality among citizens in the exercise of their political rights. The idea that one group can be granted greater voting strength than another is hostile to the one man, one vote basis of our representative government.

Under this Illinois law the electorate in 49 of the counties which contain 93.4% of the registered voters may not form a new political party and place its candidates on the ballot. Yet 25,-000 of the remaining 6.6% of registered voters properly distributed among the 53 remaining counties may form a new party to elect candidates to office. This law thus discriminates against the residents of the populous counties of the State in favor of rural sections. It, therefore, lacks the equality to which the exercise of political rights is entitled under the Fourteenth Amendment. 394 U.S. at 818–19, 89 S.Ct. at 1495–1496.

**7.** Section 2281 does not apply to the declaratory order alone either by its terms or as construed. *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 153–55, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); *Sands v. Wainwright*, 491 F.2d 417, 422 (5th Cir. 1973). And while defendants-appellants argue the applicability of this statute to the injunctive order, they urge at the same time that we may proceed directly to the merits of this case even if we should hold that the case should originally have been heard by three judges. In effect, they ask for an opinion without a remedy. Curiously, it is the plaintiffs-appellees who contend that a reversal on the three-judge court issue would require remand for convening of such a court.

The problem with this contention is that at the present time no injunctive relief is sought by plaintiffs. The only viable issue at this stage is the question of the constitutionality of section 10–2 and this issue would not require a three-judge court, absent a request for injunction. A remand under these circumstances would indeed be pointless. The section 2281 question is therefore not "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).

■ Section 10–2 suffers the same constitutional defect. To paraphrase the Supreme Court in *Moore:* Under section 10–2 the entire electorate of Cook County, which represents 45% of all registered voters in Illinois, may not form a new political party and place its candidates on the ballot. Yet any 25,000 of the remaining 55% of registered voters properly distributed among the remaining 101 counties may form a new party to elect candidates to office. Put another way, the approximately 2,750,000 registered Illinois voters in urbanized Cook County do not have the power under section 10–2 to create a statewide political party to protect their own peculiar interests, while 25,000 voters in any two or more counties in rural downstate Illinois may create such a party to protect their distinctly different, and often competing interests. This two-county requirement, like the fifty county requirement in *Moore,* "discriminates against the residents of the populous counties of the state in favor of rural sections."[8]

Given the fact that section 10–2 directly affects the fundamental right of a class of persons to "vote effectively" *Williams v. Rhodes,* 393 U.S. 23, 30–34, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968),[9] the statute cannot stand unless it is necessary to advance a compelling state interest. *Id.* at 31, 89 S.Ct. 5. If other means exist which will adequately protect the state interest involved, but which will be less intrusive on the right to vote or less discriminatory in effect, such other means must be employed and section 10–2 must be struck down. See *Dunn v. Blumstein,* 405 U.S. 330, 334–43, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).

In their brief, defendants contend that the county distribution requirement is necessary to prevent numerous parties with negligible popular support from overcrowding the ballot and thereby confusing and demeaning the statewide electoral process. In order to achieve this goal, defendants urge, with considerable candor, that the strength of the concentrated "Chicago" (Cook County) vote must be diluted:

> Politics is access to voters. The solicitation of nominating signatures and distribution of campaign literature are facilitated where the population is concentrated. A single high-rise apartment building in Chicago may contain more people than a county town, and several city blocks may contain more people than entire "downstate" counties. A Chicago precinct captain can personally contact more voters in an hour than his downstate counterpart may be able to reach in days of effort.

> Thus, a Chicago based, would-be new political party approaches any statewide election with an advantage that simply does not exist elsewhere in the State, and petition efforts, otherwise equal, produce greater results in "Chicago."

> Consequently, minority parties from "Chicago" ab initio enjoy greater ac-

---

8. In their brief appellants urge us to consider the "realities of Illinois politics." They point out that

> [t]he State is organized into 102 counties. Of these, Cook County, i. e. "Chicago", is uniquely the most urbanized county, and contains approximately 50% of the total State population. The land area of the remaining 101 counties, typically referred to as "Downstate" is primarily agricultural, and contains the remaining 50% of the population. Appellants' brief at 5.

We recognize these "realities," but we do not see how they can help appellants in this case.

Rather, they point out further the problem inherent in the two-county requirement: While the agricultural interest groups may create a special interest party entirely among their own constituents, the Cook County urban interest groups cannot, but must garner some forty-eight percent of their petition signatures from relatively rural Illinois counties.

9. "[T]he voters can assert their preferences only through candidates or parties or both." *Lubin v. Panish,* 415 U.S. 709, 716, 94 S.Ct. 1315, 1320, 39 L.Ed.2d 702 (1974).

522

cess to the ballot, and it is the vote effectiveness of downstate voters which is diluted by the demographic realities. Without some regulation, Chicago fringe candidates would easily flood the ballot.

Balancing this inequality is the object of the signature distribution requirements of § 10–2. Appellants' brief at 10.

Assuming that a compelling need exists in Illinois to "protect the integrity of its political processes from frivolous or fraudulent candidacies" *Bullock v. Carter,* 405 U.S. 134, 145, 92 S.Ct. 849, 857, 31 L.Ed.2d 92 (1972), we cannot see how this interest is tied by necessity to a discriminatory diminution of the power of the individual voter in Cook County, or any other urbanized county. Similarly, if there is a permissible and compelling state interest in limiting the total number of candidates or parties on the statewide ballot independent of the question of the seriousness or legitimacy of such candidates or parties,[10] some method is surely available which will serve this interest without making the effectiveness of an Illinois citizen's electoral power depend on his geographical location within that state.

We do not, of course, suggest what means Illinois may employ to serve its interest in maintaining the integrity of its electoral process. We hold only that the county distribution requirement of section 10–2 of the Illinois Election Code, like its predecessor, "lacks the equality to which the exercise of political rights is entitled under the Fourteenth Amendment." *Moore v. Ogilvie,* 394 U.S. at 819, 89 S.Ct. at 1496. The order of the district court declaring section 10–2 unconstitutional is therefore affirmed.

**10.** *See Generally Lubin v. Panish,* 415 U.S. 709, 715–19, 94 S.Ct. 1315, 1321, 39 L.Ed.2d 702 (1974) suggesting that the constitutionally permissible interest of the state in avoiding "laundry list" ballots is limited to the interest in screening out frivolous, non-serious parties or candidates, or those without "some reasonable quantum of voter support." *See also*

*American Party of Texas v. White,* 415 U.S. 767, 781–82, 94 S.Ct. 1296, 1307, 39 L.Ed.2d 744 (1974): "Of course, what is demanded may not be so excessive or impractical as to be in reality a mere device to always, or almost always, exclude parties with significant support from the ballot."