**People of the State of Illinois, ex rel. William I. Landwer, Plaintiff-Appellee, v. Village of North Barrington, a Municipal Corporation, Defendant-Appellant.**

Gen. No. 67–101.

Second District.

April 4, 1968.

Rehearing denied June 19, 1968.

King, Robin, Gale and Pillinger, of Chicago, and Snyder, Clarke, Dalziel, Holmquist and Johnson, of Waukegan, for appellant.

Eva Schwartzman, of Libertyville, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court.

In September, 1963, a petition was filed in the then County Court of Lake County seeking the annexation of certain territory to the Village of North Barrington. Notice of the filing and the date of hearing was published in the Frontier Enterprise, a newspaper published in Lake Zurich, Illinois. No objections were filed and the county judge entered an order referring the matter to the corporate authorities of the Village for consideration of the

question. The corporate authorities subsequently annexed the property.

In April, 1965, the plaintiff, after making a demand upon the Attorney General of Illinois and the State's Attorney of Lake County and being refused, filed this petition seeking leave to file an action in Quo Warranto challenging the validity of the annexation.

The trial court granted leave to file the petition and, subsequently, entered a judgment of ouster. The Village brings this appeal raising various points which will be discussed in turn.

The property in question consists of various tracts, some of which are connected by that owned by the plaintiff, containing 160 acres. However, only some 18.2 acres of plaintiff's land were included in the annexation. That part of the plaintiff's property which is included in the annexation is a strip measuring 2,640 feet long and 300 feet wide. The tract is vacant and apparently devoted to farming purposes.

The first and principal issue raised by this appeal is whether or not the notice published in the Frontier Enterprise was valid so as to vest jurisdiction in the then County Court. It is conceded that no newspaper is published in the municipality. The statute, in effect at the time, provided "This notice shall be given by publishing a notice thereof at least once in one or more newspapers published in the annexing municipality, or, if no newspaper is published therein, then in one or more newspapers with a general circulation within the annexing municipality and territory." (Ill Rev Stats 1963, c 24, § 7-1-2.)

A good deal of the argument is directed to the question of whether or not the Frontier Enterprise is a newspaper of general circulation in the annexing municipality and the territory. The trial judge found, in his opinion ". . . that the Frontier Enterprise was a newspaper of general

circulation in the 'Annexing Village and territory' within the meaning of the Illinois statute," but went on to state that even though there had been technical compliance with the statute, it was the intention of the Legislature that the notice given be one that was calculated to reach the parties interested in the matter. The court further held that this interpretation was in compliance with the requirements of due process, citing the case of Mullane v. Central Hanover Bank & Trust Co., 339 US 306, 94 L Ed 865, 70 S Ct 652 (1950). In this connection, the court said "The statutory notice given in this case is inadequate and fails to meet the statutory intent of such notice not because it failed to notify Landwer, but because under the circumstances it is not reasonably calculated to reach him or to inform him that his property is to be annexed."

The court has thus read into the statute a requirement that the notice not only meet the technical provisions, but that the notice also be reasonably calculated to reach the parties in interest, and concluded that this requirement was based upon the due process provisions of the Federal Constitution.

A proper consideration of this matter requires us to examine the nature of municipalities and their boundaries and the relationship between municipal boundary changes and the guarantees set forth in the Federal Constitution, if, indeed, there is any relationship between the two.

It is fundamental that municipalities are creatures of the Legislature and entirely subject to the legislative will. In the case of Hunter v. Pittsburgh, 207 US 161, 52 L Ed 151, 28 S Ct 40 (1907), the United States Supreme Court said at pages 177–179: ". . . This court has many times had occasion to consider and decide the nature of municipal corporations, their rights and duties, and the rights of their citizens and creditors . . . (Citations omitted.) We think the following principles have been established by them and have become settled doctrines

of this court to be acted upon wherever they are applicable. Municipal corporations are political subdivisions of the state created as convenient agencies for exercising such of the governmental powers of the state as may be entrusted to them . . . the number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state . . . The state, therefore, at its pleasure, may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the state is supreme, and its legislative body, conforming its action to the state Constitution, may do as it will, unrestrained by any provisions of the Constitution of the United States. Although the inhabitants and property owners may, by such changes, suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right, by contract or otherwise, in the unaltered or continued existence of the corporation or its powers, and there is nothing in the Federal Constitution which protects them from these injurious consequences."

The court has followed this doctrine in many cases, among them Reynolds v. Sims, 377 US 533, 575, 12 L Ed 2d 506, 84 S Ct 1362 (1964). An exception to this rule is found in those cases where the state uses its power of municipal boundaries to circumvent a Federally protected right, such as the gerrymandering of voting districts so as to discriminate against negro voters, as was the case in Gomillion v. Lightfoot, 364 US 339, 5 L Ed2d 110, 81 S Ct 125 (1960). However, there is no such "Federally protected right" in this case.

The Illinois Supreme Court has taken the same position in the case of School Districts and other municipal corporations. In the case of People v. Deatherage, 401 Ill 25, 81 NE2d 581 (1948), the court said, at page 31: "A community unit school district, like any other school district established under enabling legislation, is entirely subject to the will of the legislature thereafter. With or without the consent of the inhabitants of a school district, over their protests, even without notice or hearing, the State may take the school facilities in the district, without giving compensation therefor, and vest them in other districts or agencies. The State may hold or manage the facilities directly or indirectly. The area of the district may be contracted or expanded, it may be divided, united in whole or in part with another district, and the district may be abolished. All this at the will of the legislature."

The Illinois Supreme Court has consistently adhered to this rule. Indeed, it recently said "These are no longer fairly debatable constitutional questions." Board of Education of Spaulding School Dist. No. 58 v. Special Charter School Dist. No. 61, 32 Ill2d 342, 344, 205 NE2d 459 (1965).

If the Legislature can change municipal boundaries without any notice or hearing, without consent, and even against the protests of the inhabitants, and still not violate any constitutional provision, then it follows that the Legislature may prescribe the notice that is to be given in making a boundary change.

In this case, the Legislature has clearly provided for one notice to be published in a newspaper having a general circulation in the annexing municipality and the territory. The trial judge specifically found that the newspaper in question and the notice given, complied with the statute. There is no requirement that personal notice be given and we cannot go beyond the legislative directive. The trial judge was in error in requiring more notice than that required by statute.

It may well be that additional notice should be required and, within the foregoing authorities, the Legislature had every right to require further notice and even consent. The simple fact is that it has not done so. A petition for more or better notice must necessarily be addressed to the Legislature and not to the courts.

The trial court relied upon the case of Mullane v. Central Hanover Bank & Trust Co., supra. That case involved published notice to beneficiaries of a trust of the final proceedings to determine an accounting on their behalf. The proceedings were final and, of course, that is not true in this case; witness, this action of Quo Warranto being brought some 18 months after the original annexation proceedings became final. In addition to that, a change in municipal boundaries, as we have noted, is uniquely and entirely subject to the legislative will and not subject to any constitutional protection or restraint, absent the violation of a "Federally protected" right.

Since we have determined to reverse and remand the case, we will consider additional points raised by the plaintiff on appeal in support of the order of the trial court. The plaintiff alleged that there was a deliberate scheme by the petitioners and their attorneys to comply with the statute but to do so in a manner contrary to the spirit of the statute and so as to constitute a fraud upon the court and the plaintiff. In support of this contention, the plaintiff cites the case of In re Petition To Annex Certain Territory to Village of Willowbrook, 37 Ill App2d 393, 185 NE2d 696 (1962), as authority for the proposition that a fraud has been practiced. It is sufficient to say that this issue was never adjudicated. As a matter of fact, the trial court in its memorandum of decision, which was made a part of the order entered, expressly excepted this claim in arriving at its conclusion when it stated, "However, the Court deems it unnecessary to decide this issue (fraud) to dispose of the case, and hence makes no decision with respect to this matter."

271

■ The last issue raised by the plaintiff is that the ordinance of annexation was adopted at a special meeting of the board of trustees. This issue was not raised until after the proofs were closed, whereupon the plaintiff asked leave to file Count II of his Second Amended Petition. The trial court originally granted leave but subsequently changed his view and denied leave to file Count II of the Second Amended Petition. There was no cross-appeal from this order and so the matter is not properly before us.

■■ In conclusion it appears to us from the memorandum decision that there was a fundamental misunderstanding of the nature of municipalities and their boundaries. Municipalities are mere creatures of the Legislature, created for convenience in the handling of day-to-day local problems. The Legislature has complete authority over them and may change them from time to time; it may expand, contract or even abolish them, with or without notice, consent, and even against the protests of persons interested in the matter, all without transgressing any constitutional provisions. It follows that, if the petitioners for annexation comply with the technical requirements of the statute, then the court must uphold the annexation.

■ The Legislature has the power to provide more and perhaps better notice; it has the power to grant home rule to municipalities so that these matters may be decided locally. It has not done so.

The judgment is therefore reversed and the case remanded to the trial court with instructions to dismiss the petition.

Reversed and remanded with instructions.

ABRAHAMSON, P. J. and DAVIS, J., concur.