JOHN L. KALTSAS et al., Plaintiffs-Appellants, v. THE CITY OF NORTH CHICAGO et al., Defendants-Appellees.

Second District   No. 2—86—0568

Opinion filed August 12, 1987.—Rehearing denied October 7, 1987.

William W. Merrill III, Gerald P. Callaghan, and Wendy U. Larsen, all of Siemon, Larsen, Mattlin & Purdy, of Chicago (Charles L. Siemon, of counsel), for appellants.

Thomas H. Compere, of Lake Forest, and John E. Schultz, of Conzelman, Schultz, Snarski & Mullen, of Waukegan (Murray R. Conzelman, of counsel), for appellees City of Lake Forest and City of Waukegan.

William G. Rosing, of Rosing, Applehans & Smith, Ltd., of Waukegan, for appellee City of North Chicago.

Peter J. Nordigian, of Lonchar & Nordigian, of Waukegan, for appellee Village of Lake Bluff.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiffs, John L. Kaltsas, Fred Engbrecht, Diana Engbrecht, Bruce L. Felknor, Edith J. Felknor, James E. Ward, Kevin Calahan, and Gabrielle Calahan, appeal from a trial court order dismissing their complaint for failure to state a cause of action.

Plaintiffs are residents of an area located in unincorporated Lake County, Illinois. They sought to incorporate the area as a village to be known as Forest Knolls. The area is more than four square miles and contains more than 2,500 residents but less than 7,500 residents. Lake County has a population of more than 150,000. Based upon those facts, the proposed incorporation is controlled by section 2—3—5a of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 2—3—5a), which provides in pertinent part as follows:

"If the area contains fewer than 7,500 residents and lies within 1½ miles of the limits of any existing municipality, the consent of·that municipality must be obtained before the area may be incorporated." (Ill. Rev. Stat. 1985, ch. 24, par. 2—3—5a.)

The area in question here is within 1½ miles of the city of Park City and the defendants, city of North Chicago, city of Lake Forest, city of Waukegan, village of Lake Bluff, village of Green Oaks, and village of Mettawa.

On November 18, 1985, pursuant to section 2—3—5a, plaintiffs filed a petition with the circuit clerk of Lake County to call an election on the question of incorporating the village of Forest Knolls. However, while Park City consented to the proposed incorporation, the defendants refused to consent. On January 2, 1986, on motions for judgment on the pleadings filed by the defendants, the trial court

dismissed the petition. The plaintiffs appealed, and on review by this court, we reversed the trial court's decision on the basis that the trial court had not complied with section 2—3—18 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 2—3—18) and, therefore, was premature in dismissing the petition on the basis of failure to secure the necessary consents. *In re Petition to Call an Election* (1986), 148 Ill. App. 3d 436.

In the meantime, on April 2, 1986, the plaintiffs filed the present complaint against the same defendants, setting forth the facts surrounding the dismissal of the petition to incorporate and alleging in pertinent part as follows:

"26. By failing and refusing to consent to the incorporation of Forest Knoll pursuant to the municipal consent provision of section 2—3—5a, which is void, invalid and unconstitutional on its face, Defendants have deprived Plaintiffs of their constitutionally protected rights to vote and to petition and of essential government services and have caused a diminution of Plaintiff's property values in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. sec. 1983."

The relief sought by the plaintiffs included a finding that section 2—3—5a was unconstitutional, that the consent of the surrounding municipalities was unnecessary, and that the trial court should proceed with the hearing authorized by section 2—3—6 (Ill. Rev. Stat. 1985, ch. 24, par. 2—3—6).

The defendants filed motions to strike and dismiss the complaint. On June 5, 1986, following the submission of briefs and oral arguments, the trial court dismissed the complaint with prejudice. This appeal followed.

Plaintiffs contend that section 2—3—5a violates the constitutional guarantees of equal protection and substantive due process. Plaintiffs argue that it is a denial of equal protection for the State to extend the franchise to vote or petition for village incorporation to some voters in populous areas and withhold the franchise from similarly situated voters in less populous areas, unless the distinction is necessary to promote a compelling State interest. They argue further that the State is denying the unincorporated area's citizens the right to vote to consider incorporation. Inasmuch as the test for a violation of equal protection is the same for substantive due process, the following analysis is applicable to both issues.

Equal protection claims arise when a charge is made that similarly situated individuals are treated in different ways without a

rational relationship to a legitimate State purpose. (*McKinney v. George* (7th Cir. 1984), 726 F.2d 1183.) The government may differentiate between persons similarly situated as long as the classification bears a reasonable relationship to a legitimate legislative purpose, and where no fundamental right or suspect class is involved, a legislative classification need have only a rational relationship to a legitimate State purpose in order to be upheld. (*Mount Prospect State Bank v. Village of Kirkland* (1984), 126 Ill. App. 3d 799). However, laws in which challenged provisions infringe upon rights of a suspect class or impinge on fundamental rights are subject to strict scrutiny, and the burden of proof shifts to the State to prove that the challenged provision promotes a compelling interest in the least restrictive manner. *Georges v. Carney* (7th Cir. 1982), 691 F.2d 297.

Plaintiffs acknowledge that the State has broad discretion to determine the extent of direct voter participation in municipal boundary issues. (See *Carrington v. Rash* (1965), 380 U.S. 89, 13 L. Ed. 2d 675, 85 S. Ct. 775.) However, they argue that an exception has been established in that once the extent has been determined, every citizen has a constitutionally protected right to participate in the electoral process on an equal basis with all other citizens similarly situated. *Little Thunder v. South Dakota* (8th Cir. 1975), 518 F.2d 1253.

Plaintiffs argue further that the State has not shown any compelling State interest to justify the restriction in voting rights. The reason proffered by the defendants is that the consent requirement is to prevent the incorporation of villages too small to provide urban services to their residents. Plaintiff's rely on *Communist Party v. State Board of Elections* (7th Cir. 1975), 518 F.2d 517, wherein the United States Court of Appeals for the Seventh Circuit struck down an Illinois statute which required 25,000 signatures of qualified voters, not more than 13,000 of which could be counted from any one county, because it discriminated against the residents of populous counties in favor of the rural counties. Further, the plaintiffs rely on this court's recent opinion in *In re Petition to Call an Election* (1986), 148 Ill. App. 3d 436. In that case, this court reversed the trial court's dismissal of plaintiff's petition for incorporation on the basis that there was no showing of compliance with section 2—3—18 (Ill. Rev. Stat. 1985, ch. 24, par. 2—3—18). That section requires that before the question of incorporation is submitted to the electors, the county board must first determine that "(1) the proposed incorporation is compatible with the official plan for the development of the county, and (2) the lands described in the petition as intended to be embraced in the village constitute a sufficient tax base as will insure the ability

of the village to provide all necessary municipal services to its inhabitants." (Ill. Rev. Stat. 1985, ch. 24, par. 2—3—18.) Thus, the plaintiffs argue that the provisions of section 2—3—18 negate the need for the consent requirement in section 2—3—5a.

The pivotal question to be answered is whether the issue in this case is one of voting rights as urged by the plaintiffs or municipal boundaries as suggested by the defendants. In *People ex. rel. Landwer v. Village of North Barrington* (1968), 94 Ill. App. 2d 265, a constitutional challenge was raised as to the adequacy of the notice of annexation of certain property to the village. This court determined that no fundamental right was involved, and quoting extensively from *Hunter v. City of Pittsburg* (1907), 207 U.S. 161, 177-79, 52 L. Ed. 151, 158-59, 28 S. Ct. 40, 46-47, further stated as follows:

> "It is fundamental that municipalities are creatures of the Legislature and entirely subject to the legislative will. \*\*\* 'Municipal corporations are political subdivisions of the state created as convenient agencies for exercising such of the governmental powers of the state as may be entrusted to them \*\*\* the number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state \*\*\*. The state, therefore, at its pleasure, may modify or withdraw all such powers, may take without compensation such property, hold it itself or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens or even against their protest. In all these respects the state is supreme, and its legislative body conforming its action to the state Constitution, may do as it will, unrestrained by any provisions of the Constitution of the United States. Although the inhabitants and property owners may, by such changes, suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right, by contract or otherwise, in the unaltered or continued existence of the corporation or its powers, and there is nothing in the Federal Constitution which protects them from these injurious consequences.' "
> *People ex rel. Landwer v. Village of North Barrington* (1968), 94 Ill. App. 2d 265, 268-69.

In *Town of Godfrey v. City of Alton* (1975), 33 Ill. App. 3d 978, this court held that the consent requirement of section 2—3—5a was a

valid exercise of the State's police powers, and that as such it was not an unlawful delegation of legislative authority, was not without adequate standards and guidelines, was not in violation of the constitutional prohibition against laws granting special privileges and immunities, and was not in violation of the constitutional prohibition against the passage of special or local laws. However, the issues of equal protection and due process were not raised in that case.

■■ Nonetheless, we conclude that no violation of equal protection or substantive due process has occurred here because there has been no infringement of a fundamental right. This is not a case involving the gerrymandering of political districts so as to discriminate against a certain class of voters such as was the case in *Gomillion v. Lightfoot* (1960), 364 U.S. 339, 5 L. Ed. 2d 110, 81 S. Ct. 125, but rather the location of a new municipality, the control over which is firmly within the hands of the legislature. (See *People ex rel. Landwer v. Village of North Barrington* (1968), 94 Ill. App. 2d 265.) In comparison, we note that our supreme court has consistently taken the same position with respect to other municipal corporations, most notably school districts. In *Board of Education v. Special Charter School District No. 61* (1965), 32 Ill. 2d 342, 344, our supreme court stated, "[t]hese are no longer fairly debatable constitutional questions." Contra *Mid-County Future Alternatives Committee v. Metropolitan Area Local Government Boundary Com.* (1986), 82 Or. App. 193, 728 P.2d 63; *City of Seattle v. Washington* (1985), 103 Wash. 2d 663, 694 P.2d 641.

There being no infringement of a fundamental right, the State need show only a rational relationship to a legitimate State purpose rather than a compelling State interest. We observe that plaintiffs have not contended that the legislation in question bears no reasonable relationship to a legitimate State purpose.

Finally, the plaintiffs contend that section 2—3—5a denies procedural due process in that it neither provides standards for making a decision nor provides for a hearing prior to making the decision whether to grant or deny consent to the incorporation.

■■ ■ The basic requirements of procedural due process are notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case. (*In re Marriage of Mierlak* (1981), 100 Ill. App. 3d 228.) When considering whether a statute violates due process in exercising police powers of the State, the standard is whether the statute is reasonably designed to remedy ills which the legislature has determined to be a threat to public health, safety, and general welfare. *People v. Wick* (1984), 121 Ill. App. 3d 94, *aff'd*

(1985), 107 Ill. 2d 62.

Plaintiffs argue that the right to elective franchise is a fundamental right, and that therefore they are entitled to a hearing before that right can be impaired. (*Board of Regents v. Roth* (1972), 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701.) While section 2—3—5a does require a hearing on the question of whether the statutory criteria have been met, plaintiffs argue that such a hearing is insufficient because the consent requirement is not in issue at the hearing.

■ We have previously determined in this case that the right to an elective franchise is not involved in this case, but rather the prerogative of the State to establish municipal boundaries. Thus no fundamental right is in danger of impairment which would trigger the need for a hearing on the issue of the consents of the surrounding municipalities. Therefore, we hold that no violation of the plaintiffs rights to procedural due process occurred.

The judgment of the circuit Court of Lake County is affirmed.

Affirmed.

LINDBERG, P.J., and HOPF, J., concur.