THE PEOPLE *ex rel.* THE VILLAGE OF LAKE BLUFF, Plaintiff-Appellee, v. THE CITY OF NORTH CHICAGO, Defendant (Shriners Hospitals for Crippled Children *et al.*, Petitioners and Intervenors-Appellants).

Second District   Nos. 2—91—0293, 2—91—0319 cons.

Opinion filed January 30, 1992.

Mueller, Alspaugh & Lofthouse, of Schiller Park (Wayne T. Lofthouse, of counsel), for appellant Shriners Hospitals for Crippled Children.

Hercules Paul Zagoras & Associates, Ltd., and William G. Rosing, of Rosing, Applehans & Smith, Ltd., both of Waukegan (Hercules Paul Zagoras, of counsel), for other appellants.

William L. Barr, Jr., and Robert J. Best, both of Bell, Boyd & Lloyd, of Chicago (Daniel Lawler, of counsel), for appellee Village of Lake Bluff.

Peter J. Nordigian, of Brydges, Riseborough, Morris, Franke & Miller, of Waukegan, for City of North Chicago.

JUSTICE DUNN delivered the opinion of the court:

Petitioners Shriners Hospitals for Crippled Children (Shriners) and Rossman Danner Company *et al.* (Rossman Danner) appeal from the order of the trial court denying their petitions to intervene in an action between the plaintiff, the Village of Lake Bluff (Lake Bluff), and the defendant, the City of North Chicago (North Chicago). At issue is whether the petitioners have a right to intervene in an action between Lake Bluff and North Chicago which resulted in a consent decree incorporating an intergovernmental boundary agreement between the two municipalities pursuant to section 11—12—9 of the Municipal Code of 1961 (Municipal Code) (Ill. Rev. Stat. 1989, ch. 24, par. 11—12—9). We affirm the trial court's order denying the petitions.

On March 17, 1986, Lake Bluff filed a complaint for writ of *quo warranto* against North Chicago, alleging North Chicago had annexed certain parcels of land improperly and asking the court to declare these annexations null and void. On January 19, 1988, prior to trial, the parties settled the dispute and agreed to enter into a consent decree incorporating, among other things, a municipal boundary line between them, beyond which neither party would attempt to annex without the written consent of the other party.

The trial court entered the consent decree on February 16, 1988. The decree provided in part that, pursuant to the authority contained in section 11—12—9 of the Municipal Code, the parties entered into an agreement concerning the boundary line between their respective municipalities beyond which neither party would annex without the consent of the other municipality for a period of 20

years. The court attached a copy of the agreement and a map of the boundary lines to which the parties had agreed.

The boundary agreement concerned certain unincorporated property located near the southern border of North Chicago and the northern border of Lake Bluff. The agreement placed the unincorporated properties owned by the petitioners on the Lake Bluff side of the boundary line. On June 17, 1988, Shriners contacted North Chicago to pursue the annexation of its property to North Chicago. In July 1988, North Chicago approved the annexation, but notified Shriners that the actual annexation would be delayed in order to obtain consent from Lake Bluff and to amend the agreement between the municipalities. On August 29, 1988, in accordance with the agreement, North Chicago and Shriners requested that Lake Bluff agree to an amendment to the agreement allowing North Chicago to annex the property as requested by Shriners. Lake Bluff agreed to consider North Chicago's request on September 25, 1989, at its board of trustees meeting.

At the hearing, Lake Bluff heard testimony from Shriners and its engineering firm, from the city attorney for North Chicago, and from North Chicago's mayor. On November 27, 1989, Lake Bluff refused to amend the boundary agreement to allow North Chicago to annex Shriners' property. On February 16, 1990, Shriners filed a petition pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1401) for post-judgment relief in the original *quo warranto* action filed by Lake Bluff and, alternatively, a petition to intervene in that action.

On July 20, 1990, Rossman Danner, a contract purchaser of an unincorporated property located on Lake Bluff's side of the boundary, the First National Bank of Highland Park as trustee of the property, and Edward, Helen and Percy Lloyd filed a petition to intervene and a complaint for declaratory judgment. The purchase of the property by Rossman Danner was contingent upon the annexation of the property to North Chicago.

On February 15, 1991, after hearing argument, the trial court entered an order denying the petitions to intervene and the other petitions seeking relief from Lake Bluff's refusal to permit the annexation. The petitioners appeal, claiming the trial court erred in denying their petitions to intervene and in construing section 11—12—9 to bar the petitioners from seeking annexation of their properties. Shriners claims that the trial court also erred in denying its section 2—1401 petition for relief. In addition, Rossman Danner claims the trial court erred in refusing to consider its motion for a

declaratory judgment. The petitioners' claims have been consolidated on appeal. We affirm.

The petitioners assert their right to intervene in the present matter under section 2—408(a) of the Code. That section provides in part:

"(a) Upon timely application anyone shall be permitted as of right to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody or subject to the control or disposition of the court or a court officer." Ill. Rev. Stat. 1989, ch. 110, par. 2—408(a).

■ A petition to intervene must allege specific facts that demonstrate that the petitioners have a right to intervene. (*People ex rel. Thomas v. Village of Sleepy Hollow* (1981), 94 Ill. App. 3d 492, 495.) In determining whether to grant a petition to intervene as a matter of right, a trial court's discretion is limited to determining timeliness, inadequacy of representation by parties already in the suit, and whether the party seeking to intervene has a sufficient interest in the suit. (*Schwechter v. Schwechter* (1985), 138 Ill. App. 3d 602, 604.) Unless there is a clear abuse of discretion, the court's judgment thereon will not be disturbed. (*Johnson v. Burnett* (1989), 182 Ill. App. 3d 574, 580.) The intervenor need not show a direct interest in the suit; however, he or she must establish an injury to an enforceable right or interest which must be more than a general interest. *Harris Trust & Savings Bank v. Duggan* (1983), 95 Ill. 2d 516, 525; *Serio v. Equitable Life Assurance* (1989), 184 Ill. App. 3d 432, 435-36.

The petitioners claim that, because they have the right to petition North Chicago to request the annexation of their land under section 7—1—2 of the Municipal Code (Ill. Rev. Stat. 1989, ch. 24, par. 7—1—2), they have a sufficient interest in the subject matter to allow for their intervention. We disagree.

■ Section 11—12—9 of the Municipal Code (Ill. Rev. Stat. 1989, ch. 24, par. 11—12—9) provides if unincorporated territory is within 1½ miles of the boundaries of two or more corporate authorities that have adopted official plans, those corporate authorities may agree upon a line which shall mark the boundaries of the jurisdiction of each corporate authority adopting the agreement. In the

absence of an agreement, section 11—12—9 provides that the jurisdiction of any one of the corporate authorities shall extend to a median line equidistant from its boundary and the boundary of the other corporate authorities. It also provides in part:

"On and after September 24, 1987, such agreement may provide that one or more of the municipalities shall not annex territory which lies within the jurisdiction of any other municipality, as established by such line. In the absence of such a boundary line agreement, nothing in this paragraph shall be construed as a limitation on the power of any municipality to annex territory." Ill. Ann. Stat., ch. 24, par. 11—12—9 (Smith-Hurd 1990).

■ As we explained in *Village of South Elgin v. City of Elgin* (1990), 203 Ill. App. 3d 364, the subsequent amendments to section 11—12—9 expressly provide that boundary line agreements may limit the annexation powers of one or more of the municipalities regarding territory which lies within the jurisdiction of any other municipality. In *Village of South Elgin*, we held that where no boundary line agreement exists, nothing prohibits one municipality from annexing territory within another municipality's jurisdiction. (*Village of South Elgin*, 203 Ill. App. 3d at 371.) We stated:

"Annexation of contiguous, unincorporated territory lying within the respective municipalities' planning jurisdiction boundaries is prohibited only if (1) the boundary line was an agreed-upon one *and* (2) the boundary-line agreement also included the annexation prohibition." (Emphasis in original.) (*Village of South Elgin*, 203 Ill. App. 3d at 371.)

In the present case, Lake Bluff and North Chicago explicitly entered into an agreement limiting the power of each to annex territory within the other's jurisdiction without consent.

Municipalities are creatures of the legislature and are subject to the legislative will (with the exception of the powers enuring to a "home rule" municipality). (*In re Disconnection of Certain Territory From the Village of Machesney Park* (1984), 122 Ill. App. 3d 960, 965; *People ex rel. Landwer v. Village of North Barrington* (1968), 94 Ill. App. 2d 265, 268.) Thus, it is the legislature which is granted the power of prescribing the conditions relative to the alteration of municipalities—whether through annexation, disconnection or incorporation. *In re Disconnection of Territory*, 122 Ill. App. 3d at 965; *La Salle National Bank v. Village of Burr Ridge* (1967), 81 Ill. App. 2d 209, 218.

Although the legislature has seen fit to give certain property owners the right to petition a municipality for the annexation of their land, it has not granted those property owners the right to have that land annexed. Thus, a boundary line agreement which provides that the parties can agree to an annexation to the contrary of the agreement does not conflict with the right of property owners to petition for that annexation. See *Groenings v. City of St. Charles* (1991), 215 Ill. App. 3d 295, 304.

The legislature, recognizing that a municipality's concerns do not end at its borders (*Village of Lake Bluff v. Jacobson* (1983), 118 Ill. App. 3d 102, 110), enacted section 11—12—9 in an effort to promote developmental harmony between incorporated municipalities and contiguous unincorporated territories which may ultimately be annexed. (*Village of South Elgin*, 203 Ill. App. 3d at 373.) North Chicago and Lake Bluff entered into the boundary agreement in accord with that section, and the petitioners lack a sufficient interest in the present case to provide for their intervention into the matter.

Further, Lake Bluff's suit against North Chicago was disposed of by consent decree. A consent decree is not considered a judicial determination of the rights of the parties, nor does it purport to represent the judgment of the court, but merely records that agreement of the parties. (*People ex rel. Thomas v. Village of Sleepy Hollow* (1981), 94 Ill. App. 3d 492, 495.) This court has held that in such a situation the petitioner's interests could not be affected by the decree, and, therefore, the petitioners had no right to intervene. *People ex rel. Thomas v. Village of Sleepy Hollow*, 94 Ill. App. 3d at 496.

Petitioners argue the trial court's interpretation of section 11—12—9 resulted in an unconstitutional deprivation of their property rights without due process. However, the law is clear that the powers conferred upon municipalities and the territory over which these powers will be exercised rests within the sole discretion of the State. (See *Kaltsas v. City of North Chicago* (1987), 160 Ill. App. 3d 302, 307; *People ex rel. Landwer v. Village of North Barrington*, 94 Ill. App. 2d at 268-69; *Hunter v. City of Pittsburg* (1907), 207 U.S. 161, 177-79, 52 L. Ed. 151, 158-59, 28 S. Ct. 40, 46-47.) Thus, the case at bar does not involve a fundamental right but, rather, the prerogative of the State to establish municipal boundaries.

In *People ex rel. Landwer v. Village of North Barrington*, 94 Ill. App. 2d 265, this court held no fundamental right was implicated where the adequacy of notice of annexation was at issue.

Quoting extensively from the United States Supreme Court in *Hunter v. City of Pittsburg*, 207 U.S. at 177-79, 52 L. Ed. at 158-59, 28 S. Ct. at 46-47, we stated:

"The state, therefore, at its pleasure, may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the state is supreme ***. Although the inhabitants and property owners may, by such changes, suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right, by contract or otherwise, in the unaltered or continued existence of the corporation ***." *People ex rel. Landwer v. Village of North Barrington*, 94 Ill. App. 2d at 269.

■ We conclude that no violation of due process has occurred, substantive or procedural, because an owner of unincorporated property does not have a fundamental right to be annexed to a municipality. Nor does a property owner possess an entitlement to increase the value of his or her land through annexation. (*Groenings*, 215 Ill. App. 3d at 307.) The City of North Chicago struck a bargain with the Village of Lake Bluff. It agreed not to annex property within Lake Bluff's planning jurisdiction. Section 11−12−9 of the Municipal Code of 1961 permits such an action. Because no fundamental right is in danger of impairment, no need for a hearing on the issue exists. See *Kaltsas*, 160 Ill. App. 3d at 309.

A municipality has a legitimate interest in regulating the development of land near its borders to protect the health and safety of its people (*City of Urbana v. County of Champaign* (1979), 76 Ill. 2d 63, 70) and to provide uniformity and continuity (*Petterson v. City of Naperville* (1956), 9 Ill. 2d 233, 246). (*Village of South Elgin*, 203 Ill. App. 3d at 373.) Lake Bluff and North Chicago properly exercised their powers to enter into a boundary line agreement to further this interest.

■ We need not address Shriners' claim that the trial court erred in denying their section 2−1401 petition, as that relief is only available to the parties to an action. (*Elmhurst National Bank v. Novak* (1985), 137 Ill. App. 3d 904, 906-07.) Under the authority of *In re Estate of Reilly* (1979), 68 Ill. App. 3d 906, this court has

held that section 2—1401 (previously section 72) was never intended to permit a person not a party to an action to intervene after final judgment and reopen the suit so as to permit a new claim to be filed. *Elmhurst National Bank,* 137 Ill. App. 3d at 906.

Accordingly, the judgment of the circuit court of Lake County denying the petitions to intervene is affirmed.

Affirmed.

BOWMAN and NICKELS, JJ., concur.