THE VILLAGE OF SOUTH ELGIN, Plaintiff-Appellee and Cross-Appellant, v. THE CITY OF ELGIN, Defendant-Appellant and Cross-Appellee (721 Partnership *et al.*, Intervening Petitioners-Appellants).

Second District Nos. 2—90—0029, 2—90—0030 cons.

Opinion filed September 21, 1990.

Daniel P. Blondin and Kathleen A. McCarthy, Assistant Corporation Counsel, of Elgin, and Bradtke & Zimmermann, of Mt. Prospect (Erwin W. Jentsch, of counsel), for appellant City of Elgin.

Siegel & Warnock, of Chicago (Jack M. Siegel, of counsel), for other appellants.

Kenneth F. Miles, of Elgin, for appellee.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, the City of Elgin, appeals from an order of the circuit court of Kane County enjoining its annexation of approximately eight acres of land located at the southeast corner of a 150-acre tract of land, known as the Zale property, in unincorporated Kane County. The 150-acre tract, which is contiguous to the City of Elgin on its southern boundary, was the subject of a proposed annexation agreement between the city and the legal and beneficial owners of the property, the Harris Bank and Trust Company, as trustee under trust agreement No. 42491, and Nancy, Kelly Ann, Kathy Ann and William Branch, Jr.

The Village of South Elgin filed the instant suit for declaratory and injunctive relief, contending the eight-acre corner portion of the property could not be annexed by the City of Elgin because it was situated on South Elgin's side of the median line equidistant from its boundary and that of Elgin which is prescribed in section 11—12—9 of the Illinois Municipal Code (the Code) (Ill. Rev. Stat. 1987, ch. 24, par. 11—12—9). That section provides that municipalities which have adopted official plans "may agree upon a line which shall mark the boundaries of the jurisdiction of each of the corporate authorities who have adopted such an agreement." Elgin and South Elgin have each adopted official plans, but they have not agreed upon a jurisdictional-boundary line as permitted under section 11—12—9. That section further provides that "[i]n the absence of such agreement, the jurisdiction of any one of the corporate authorities shall extend to a median

*line equidistant* from its boundary and the boundary of the other corporate authority nearest to the boundary of the first corporate authority at any given point on the line." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 24, par. 11–12–9.

The median line equidistant referred to in italics above, South Elgin argues, marks the point beyond which neither it nor the City of Elgin may *annex* unincorporated territory and establishes a "buffer zone" of sorts between the two municipalities. During the course of the proceedings, the trial court denied petitions to intervene filed by the contract purchasers of the property who intended to develop it, the 721 Partnership, and the property owners, Harris Bank as trustee and the Branches (collectively referred to hereafter as intervenors).

Upon Elgin and South Elgin's cross-motions for summary judgment, the court agreed with South Elgin's construction of section 11–12–9, and it enjoined the City of Elgin from annexing the eight-acre portion of the property which lies on South Elgin's side of the equidistant line. It is from that judgment that the City of Elgin appeals. Intervenors appeal from the denial of their petitions to intervene and the judgment enjoining annexation of the eight-acre portion of the subject property. The trial court denied South Elgin's post-trial motion to modify the judgment to enjoin Elgin permanently from annexing any property lying beyond the median line equidistant between the municipalities regardless of any subsequent annexation of unincorporated territory on the Elgin side of the equidistant line. Elgin's appeal and South Elgin's cross-appeal were consolidated with the intervenors' appeal.

*Sua sponte,* we note South Elgin's citation of authority in its brief violates Supreme Court Rule 341 in numerous instances in that citation to the official reports is not given. (113 Ill. 2d R. 341(d).) Appellate counsel are expected to abide by the civil appeals rules uniformly throughout the course of a brief, not simply when it is convenient for them to do so. Further, we strike that portion of South Elgin's cross-appellant's reply brief which presents argument in response to Elgin's appellant's reply brief, and which includes matters *de hors* the record. South Elgin is the appellee in Elgin's appeal, and nothing in Supreme Court Rule 341 permits surreply by an appellee. 113 Ill. 2d R. 341.

Generally, when no material facts are in dispute, questions of law are properly decided on a motion for summary judgment. (*Bohnen International, Inc. v. Liberty Mutual Insurance Co.* (1983), 120 Ill. App. 3d 657.) The construction of a statute is a question of law which may be construed independently of the trial court's judgment. (*Whiteco Metrocom Division v. Village of Downers Grove*

(1990), 197 Ill. App. 3d 174, 181.) As in the trial court, this court's duty in construing a statute is to ascertain and give effect to the legislative intent underlying the statute. (*Brown v. Union Tank Car Co.* (1990), 197 Ill. App. 3d 357, 361.) We do this by looking at the statute as a whole, taking into consideration its nature and its purposes and ascribing to each word, clause or sentence therein some reasonable meaning. (*Whiteco*, 197 Ill. App. 3d at 181.) Absent any contrary legislative intent, the same or substantially the same words appearing in different parts of the same statute will be consistently interpreted. (*People v. Yarbrough* (1988), 166 Ill. App. 3d 782.) We need not resort to extrinsic construction aids where the legislative intent can be ascertained from the statutory language itself. *Whiteco*, 197 Ill. App. 3d at 181.

It is undisputed here that (1) there is unincorporated territory within 1 1/2 miles of the boundaries of the City of Elgin and the Village of South Elgin; (2) both municipalities have adopted official plans; (3) although permitted to do so under section 11—12—9, Elgin and South Elgin have not agreed "upon a line which shall mark the boundaries of the jurisdiction of each of the corporate authorities who have adopted such agreements"; and (4) an imaginary median line drawn equidistantly between the two municipalities as prescribed by section 11—12—9 when there is no boundary-line agreement between the municipalities shows that approximately eight acres of the southeast corner of the Zale property which is sought to be annexed to Elgin is located on the South Elgin side of the median line.

It was and is South Elgin's position that the eight acres lying on the South Elgin side of the imaginary median line cannot be annexed by Elgin because Elgin's "jurisdiction" to annex extends only as far as the median line. It was and is the position of the City of Elgin and the intervenors that the term "jurisdiction" used in the last paragraph of section 11—12—9 refers to *planning* jurisdiction only and does not purport to regulate its "jurisdiction" to *annex* unincorporated territory which otherwise is contiguous with its boundary and meets the requirements for annexation prescribed in article 7 of the Code. Ill. Rev. Stat. 1987, ch. 24, par. 7—1—1 *et seq.*

In granting summary judgment for South Elgin and enjoining Elgin's annexation of the eight-acre portion of the subject property, the trial court adopted South Elgin's construction of the statute. Based on its belief that "[t]he right to plan absent the corollary right to enforce is useless," the court found that the term "such agreement" in the last paragraph of section 11—12—9 relates, by *common usage*, "back to the annexation agreements referred to in the amendment"

to the statute. We cannot concur in the court's plainly incorrect construction of the statute and, therefore, reverse its judgment enjoining Elgin's annexation of the eight-acre portion of the subject property.

■ The error in the court's construction of section 11—12—9 is apparent when the statute is viewed in context and the case which prompted amendments to it is considered. In construing the provisions of a statute, it is proper, and often necessary, to consider the provisions of other statutes relating to the same subject matter for the purpose of determining legislative intent. (*Petterson v. City of Naperville* (1956), 9 Ill. 2d 233, 243.) In context, section 11—12—9 appears in Division 12, "Plan Commissions," of article 11, "Corporate Powers and Functions," of the Code. (Ill. Rev. Stat. 1987, ch. 24, par. 11—12—4 *et seq.*) One of the general powers which may be exercised by municipal plan commissions and planning departments is to prepare and recommend to the corporate authorities a comprehensive plan for the present and future development or redevelopment of the municipality. (Ill. Rev. Stat. 1987, ch. 24, par. 11—12—5(1).) If and when such comprehensive plan is adopted, the plan becomes the official comprehensive plan of that municipality. The plan may be made applicable by its terms "to land situated within the corporate limits *and contiguous property not more than one and one-half miles beyond the corporate limits and not included in any municipality.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 24, par. 11—12—5(1).) The plan may be implemented by ordinances establishing reasonable standards of design for subdivisions, resubdivisions and redevelopment areas including reasonable requirements governing, *inter alia,* public streets, sidewalks, parks, school grounds, residential lot sizes, and water and sanitary sewer services. The plan may also designate land suitable for annexation to the municipality. The plan is advisory and in and of itself shall not be construed to regulate or control the use of private property in any way except to the extent it has been implemented by duly enacted ordinances. Ill. Rev. Stat. 1987, ch. 24, par. 11—12—6.

In instances where unincorporated territory lies between the boundaries of two or more corporate authorities which are situated *less than* 1½ miles from each other, the jurisdiction of the corporate authorities *with respect to the applicability of each of their official plans as permitted in section 11—12—5* extends either (1) to a line which they have agreed upon or, (2) "[i]n the absence of such agreement" as to a boundary line, "to a median line equidistant" from the boundary of one of the corporate authorities and the boundary of the other corporate authority nearest to the boundary of the first corpo-

rate authority at any given point on the line. Ill. Rev. Stat. 1987, ch. 24, par. 11—12—9.

South Elgin's assertion, and the trial court's belief, that these two jurisdictional alternatives relate to the respective corporate authority's jurisdiction to *annex* unincorporated territory within 1½ miles of its boundary rather than simply include it in the area to which its official plan is applicable derives, incorrectly we believe, from amendments made to section 11—12—9 which were prompted by this court's opinion in *Village of Long Grove v. Village of Kildeer* (1986), 146 Ill. App. 3d 979.

In *Kildeer*, the Village of Long Grove sought to enforce a jurisdictional-boundary agreement between itself and the Village of Kildeer. The 1964 agreement included a provision prohibiting either village from annexing territory beyond the jurisdictional boundary line fixed by them without the consent of the other. In 1977, Kildeer adopted an ordinance repealing the agreement, and, in 1985, it annexed a contiguous 32-acre parcel of land which overlapped the Long Grove side of the jurisdictional-boundary line. Upon Long Grove's complaint for declaratory and injunctive relief to enforce the 1964 agreement, the circuit court, without deciding the validity of the agreement, granted Kildeer's motion to dismiss on the ground Kildeer had terminated the agreement in 1977.

On appeal, this court affirmed the judgment, concluding the agreement between the villages prohibiting annexation was invalid as an unauthorized assumption of municipal power. Long Grove contended there that the authority for its prohibitory annexation agreement with Kildeer was the statute which is at issue here as well, section 11—12—9 of the Code. Observing that non-home-rule units possess only those powers which are granted to them by law or those necessarily implied from or incident to such powers, we construed section 11—12—9 as being concerned solely with jurisdictional boundary lines relating to *planning*, not *annexation*. (146 Ill. App. 3d at 981.) We reached this same conclusion under virtually identical circumstances in *Village of Lisle v. Village of Woodridge* (1989), 192 Ill. App. 3d 568, where we found the boundary-line agreement between the two villages prohibiting acts to annex beyond the boundary line invalid and unenforceable inasmuch as there was—at the time the agreement was made—no statutory authority for such an agreement.

Subsequent amendments to section 11—12—9, effective on and after September 24, 1987, now expressly provide that boundary-line agreements which have been entered into "*may* provide that one or more of the municipalities shall not annex territory which lies within

the jurisdiction of any other municipality, as established by such line." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 24, par. 11—12—9.) Section 11—12—9 now also provides that the boundary-line agreements shall be valid for the term of years agreed upon, but not to exceed 20 years. If no term is stated in the agreement, it is valid for 20 years.

■ It is clear that the legislative intent underlying section 11—12—9 was simply to prescribe what the limits of the planning jurisdiction provided for in section 11—12—5 would be in those instances where there was unincorporated territory lying between municipalities which were less than 1½ miles from each other. Both before and after the amendments to section 11—12—9, there were and still are only two planning jurisdiction options: the municipalities can either agree on the location of the jurisdictional-boundary line, or, if they do not, a median line equidistant between them will be deemed to be the planning jurisdiction boundary. Annexation of contiguous, unincorporated territory lying within the respective municipalities' planning jurisdiction boundaries is prohibited only if (1) the boundary line was an agreed-upon one *and* (2) the boundary-line agreement also included the annexation prohibition.

Because Elgin and South Elgin had no boundary-line agreement, Elgin's authority to annex the Zale property was subject only to the provisions of division 1 of article 7 of the Code. (Ill. Rev. Stat. 1987, ch. 24, par. 7—1—1 *et seq.*) In light of our construction of section 11—12—9, we conclude South Elgin was not entitled to judgment as a matter of law on its cross-motion for summary judgment and that the court erred in enjoining Elgin's annexation of the eight-acre portion of the Zale property situated on the South Elgin side of the median line equidistant. Accordingly, we reverse the court's judgment, dissolve the injunction, and remand the cause for entry of summary judgment in favor of the City of Elgin.

We next consider South Elgin's cross-appeal from the trial court's denial of its post-trial motion to modify the summary judgment order. South Elgin's post-trial motion requested the court modify its order so as to enjoin Elgin permanently from ever annexing any property situated on the South Elgin side of the median line equidistant as that line was shown on the Elgin township map. A copy of the relevant portion of the map was submitted in the trial court as exhibit C attached to the affidavit of Steve Larson, a registered professional engineer, in support of South Elgin's cross-motion for summary judgment and included in the record as South Elgin exhibit No. 1. South Elgin argues the court abused its discretion in de-

nying its post-trial motion because its denial "made the amendment to said section 11—12—9 unworkable and insured getting a ridiculous result with respect to the median equidistant line." The "ridiculous result" anticipated by South Elgin is that if the equidistant line is not fixed—frozen in time—forever as shown on exhibit No. 1, "[y]ou could easily have a situation where the annexing municipality annexes up to the median equidistant line as originally established *** [and] could then claim that the equidistant line had shifted *** and then any remaining territory could be annexed, piecemeal, up to such [shifted] median equidistant line," until the two municipalities adjoin each other.

This result, South Elgin asserts, would "defeat the intention of the legislature and make a mockery of the stability and sanctity of any median equidistant line." In response to Elgin's and the intervenors' argument that it has failed to cite any authority in support of its contention that the trial court abused its discretion, South Elgin replies none can be cited because the amendments to section 11—12—9 are so new and have not yet been construed, and, further, that section 11—12—9 "is not going to work unless there is a 'freeze' with respect to a specific map or territory placed in evidence the first time that a court is cognizant of the application of section 11—12—9 by a municipality's bringing suit to protect its interest under said section."

Having construed section 11—12—9 as set forth above, we find no merit in South Elgin's contention that the trial court abused its discretion. There is nothing ridiculous about the "domino"-type effect South Elgin claims will obtain if the trial court's denial of its modification motion is not reversed. Rather, as Elgin asserts, it is only South Elgin's "tortured interpretation" of the statute which creates a conflict between the planning jurisdiction statute and the annexation statute. South Elgin's interpretation, had we accepted it, would result in the inability of a property owner to petition successfully for annexation of his property to any one municipality in a circumstance where the property is partly within the planning jurisdiction of one municipality, although not contiguous to it, while the remainder of its territory is contiguous to another municipality.

■ The Code clearly contemplates and provides for the annexation of unincorporated territory which is contiguous to already incorporated territory. (Ill. Rev. Stat. 1987, ch. 24, par. 7—1—1 *et seq.*) The extraterritorial planning jurisdiction power given to municipalities recognizes that a municipality's concerns do not end at its borders (*Village of Lake Bluff v. Jacobson* (1983), 118 Ill. App. 3d 102,

110) and that a municipality has a legitimate interest in regulating the development of land near its borders to protect the health and safety of its people (*City of Urbana v. County of Champaign* (1979), 76 Ill. 2d 63, 70) and to provide uniformity and continuity (*Petterson v. City of Naperville* (1956), 9 Ill. 2d 233, 246).

■ Section 11—12—9 encourages nearly adjoining municipalities to agree on planning jurisdiction boundaries and, if possible, annexation limits as well, which take into account the natural flow of storm water drainage and the common ownership of any single tract of land. (Ill. Rev. Stat. 1987, ch. 24, par. 11—12—9.) Absent such agreement, it establishes an equal division of planning jurisdiction based on the municipalities' boundaries as they exist. Section 11—12—9 promotes developmental harmony between incorporated municipalities and contiguous unincorporated territories which may ultimately be annexed.

The modification to the court's judgment suggested by South Elgin is not supported by law or logic, and we conclude the trial court did not abuse its discretion in denying South Elgin's post-trial motion. Accordingly, in that respect, its judgment is affirmed.

■ Finally, intervenors concede that reversal of the trial court's judgment would render their appeal from its denial of their petitions to intervene moot. We agree. They urge, however, that the court's judgments as to them nevertheless should not be allowed to stand.

The relief intervenors urge was afforded the intervening petitioner-appellant in *Hollobow v. Energy Resources Corp.* (1981), 94 Ill. App. 3d 339. The court there observed that dismissal of the intervenor's appeal—which had been rendered moot by reversal of the judgment in the cause in which she sought to intervene—would make the judgment of the trial court *res judicata* on the issues raised in the intervenor's appeal which issues may be relevant to another controversy presented in another proceeding. Cognizant of the general rule that an appellate court will not review a case merely to decide moot or abstract questions, to establish precedent, or to render a judgment to guide potential future litigation, the court determined that the appropriate disposition of the intervenor's appeal was to set aside the order of the trial court denying the petition to intervene. Accordingly, it vacated the trial court's order and remanded the cause with directions to dismiss the petition to intervene.

We agree with the reasoning in *Hollobow.* Accordingly, the judgments of the circuit court denying intervenors' petitions to intervene are vacated and the cause remanded with directions to dismiss the petitions.

To summarize, in appeal No. 2—90—0029, the judgment of the circuit court of Kane County granting summary judgment for South Elgin is reversed, the injunction dissolved, and the cause remanded with directions; its judgment denying South Elgin's post-trial motion is affirmed.

In appeal No. 2—90—0030, the judgments of the circuit court of Kane County denying intervenors' petitions to intervene are vacated and the cause remanded with directions to dismiss the petitions to intervene.

No. 2—90—0029, Judgments reversed in part and affirmed in part; cause remanded with directions.

No. 2—90—0030, Judgments vacated; cause remanded with directions.

INGLIS and McLAREN, JJ., concur.