HEDWIG SYMANSKI, Plaintiff-Appellant, v. FIRST NATIONAL BANK OF DANVILLE, Defendant-Appellee.

Fourth District   No. 4—92—0653

Opinion filed March 4, 1993.

LUND, J., specially concurring.

Gunn & Hickman, P.C., of Danville (Michael C. Upperman, of counsel), for appellant.

F. Daniel Welsch, of Welsch & Hall, of Danville (Charles C. Hall, of counsel), for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:
Plaintiff, Hedwig Symanski, appeals the trial court's order granting defendant First National Bank of Danville's motion for summary judgment and denying her cross-motion for summary judgment. The trial court held defendant had both a contractual and a statutory right to set off funds held by plaintiff and her three sons, Paul, Henry and Michael, in several certificates of deposit (CDs) to partially satisfy the debt of two of the sons, Michael and Henry. We affirm in part and reverse and remand in part.

The facts of this case are relatively simple. Funds were deposited with defendant in the form of various CDs between October 7, 1983, and May 5, 1989. These CDs were virtually identical except for the amount of each one and the maturity date. On April 8, 1983, a CD was issued to Hedwig Symanski or Henry G. Symanski, account No. 01-606220-78, in the amount of $3,050. That CD was not included in plaintiff's complaint and is not a part of this litigation. As alleged by the plaintiffs, the remaining CDs were issued in the names of "Hedwig *** or Paul *** or Henry *** or Michael," "either or the survivors," as follows:

| Account No. | Date | Amount |
|---|---|---|
| 01-580205-60 | May 11, 1984 | $44,318.25 |
| 01-201638-67 | October 31, 1987 | $15,576.09 |
| 01-201638-68 | October 31, 1987 | $15,576.09 |
| 01-201638-65 | October 31, 1987 | $15,576.09 |
| 01-580205-61 | October 12, 1984 | $20,000.00 |
| 01-201638-69 | November 5, 1987 | $ 3,180.76 |
| 01-201638-66 | October 31, 1987 | $15,576.09 |

The CDs were automatically renewable and interest payments to the owners were made either monthly or quarterly as set out in each CD. All of the CDs were shown on their face to be nonnegotiable.

A signature card/time deposit agreement was signed by plaintiff and her three sons. The signature card contains account No. 01-580205-60, which corresponds to CD No. 56158, purchased on May 11, 1984, for $44,318.25. The signature card provides that only one endorsement is required for withdrawals.

Michael and Henry Symanski were indebted to defendant in the amount of $386,215.73 for loans made to Man, Inc., of which Michael and Henry were comakers and guarantors. On or about May 6, 1988, according to the affidavit of defendant's president, Leslie N. Cheatle, the CDs mentioned above had a balance of $132,604.34. Defendant set off the sum of $129,596.84, leaving a zero balance in these accounts and credited those funds to reduce the indebtedness of Michael and Henry to defendant. No explanation is given in the record for the disparity between the outstanding balance of the CDs and the amount offset by defendant. At that time, the debt owed by Michael and Henry had matured and they were in default for failing to pay the debt at maturity.

Approximately one year later, plaintiff demanded return of the money held in these CDs, but defendant refused to turn over the funds. Plaintiff therefore filed a seven-count complaint, alleging for each CD, (1) she alone contributed all the funds used to purchase the CDs; (2) defendant was aware that the funds used to purchase the CDs were those of plaintiff; and (3) at no time did Paul, Henry or Michael Symanski ever exercise control over the CDs. Plaintiff further alleged that on May 6, 1988, defendant seized these CDs without cause or justification and that defendant had refused to turn over the money to her despite her demand for that money.

In its answer, defendant admitted this money was deposited and CDs were issued, but denied that plaintiff deposited the money and alleged the funds were deposited by plaintiff or Paul or Henry or Michael Symanski. Defendant denied the remaining allegations of plaintiff's complaint.

Defendant raised two affirmative defenses to plaintiff's complaint. First, defendant alleged it had a contractual right to set off these funds based on the language found on the CDs, the signature card/time-deposit agreement, and the rules and regulations of the bank. Second, defendant alleged it had a statutory right to set off these funds pursuant to section 2(a) of "An Act to revise the law in relation to joint rights and obligations" (Act) (Ill. Rev. Stat. 1989, ch. 76, par.

2(a))). Defendant asserted that under either affirmative defense, its action constituted a valid and sufficient discharge of its obligation to pay the CDs.

Defendant filed a motion for summary judgment and plaintiff filed a cross-motion for summary judgment. The trial court denied plaintiff's cross-motion for summary judgment and granted defendant's motion for summary judgment holding defendant had both a contractual right and a statutory right to set off the debts of Henry and Michael Symanski against the funds contained in the CDs. Plaintiff timely filed her notice of appeal.

Summary judgment should only be granted if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Department of Revenue v. Heartland Investments, Inc.* (1985), 106 Ill. 2d 19, 31, 476 N.E.2d 413, 419.) Construction of statutes and contracts is a question of law. (*Village of South Elgin v. City of Elgin* (1990), 203 Ill. App. 3d 364, 367, 561 N.E.2d 295, 297; *Transcraft Corp. v. Anna Industrial Development Corp.* (1991), 223 Ill. App. 3d 100, 103, 584 N.E.2d 1033, 1035.) When the matter at issue may be decided as a question of law, summary judgment is a proper remedy. *Johnson v. American Family Mutual Insurance Co.* (1990), 193 Ill. App. 3d 794, 799, 550 N.E.2d 668, 672.

■ Issuance of a time certificate of deposit creates the relationship of debtor and creditor between the bank and the depositor. (*Bonhiver v. State Bank* (1975), 29 Ill. App. 3d 794, 802, 331 N.E.2d 390, 397.) The bank-depositor/debtor-creditor relationship arises from and is regulated by a contract, rather than by ownership of the funds. (*Suburban Bank v. Bousis* (1991), 144 Ill. 2d 51, 62, 578 N.E.2d 935, 941.) It is a fundamental principle of banking law that the relationship between a bank and its depositor is created and regulated by the express or implied contracts between them. (*Bieze v. Coca* (1977), 54 Ill. App. 3d 7, 15, 369 N.E.2d 106, 112.) The contractual agreement between plaintiff and defendant in this case integrated several documents, including the CDs, the signature card/time deposit agreement, and the rules and regulations governing the account. See *Suburban Bank*, 144 Ill. 2d at 62, 578 N.E.2d at 941.

Plaintiff contends any contractual right defendant may have had to set off the CDs only applied to CD No. 56158. Plaintiff alleges the signature card reflects account No. 01-580205-60, which is the same account number on that CD. She concludes since only one signature

card was executed reflecting that account number, and the provisions of the time deposit agreement pertaining to that account number specify "this account," defendant could only set off the funds of that CD. We agree.

The following language appears on the signature card:

> "SIGNATURES: The persons signing below agree to the terms stated on this form and acknowledged receipt of at least one copy on today's date."

The time deposit agreement states:

> "GENERAL TERMS—'We' and 'us' means [sic] the financial institution. 'You' means the depositor(s). 'Deposit' means the money you have deposited with us evidenced by the *certificates listed on this form.* The printed terms on this form will be our agreement concerning the deposit unless varied by typed or handwritten terms on this form or by a separate, written agreement. This agreement incorporates state and federal law, and is subject to laws regulating transfers at death and estate and other succession taxes.

> AGREEMENT—You agree to all our rules regulations applicable now or later to time deposits.
> \*\*\*

> SETOFF—Each of you agrees that we may at any time and without prior notice (unless required by law) set-off [sic] the funds in *this account* against any debt any of you owes us now or later. However, we can only set-off [sic] against that portion of the account which the debtor has the right to withdraw. If more than one endorsement is necessary for withdrawal, we can only set off debts owed by any combination of a number of you equal to or greater than the number of endorsements required.

> If we exercise our right of set off prior to the maturity of the deposit, we will first subtract the early withdrawal penalty from the account balance and then subtract the amount you owe us. You will remain liable for any deficiency." (Emphasis added.)

Finally, the rules and regulations of the bank governing these accounts contain the following paragraph:

> "SETOFF—You agree that we have the right to set off against all or any part of the account balance on any date that any of you may owe us to the extent of your right to withdraw or transfer funds to *this account* (without regard to the frequency or minimum amount limits). This right may be exercised

at any time and without prior notice (except as limited by law). This right applies even if one or more of you having the right of withdrawal was not obligated to us on the debt. This right applies to any debt we now own or hereafter acquire, and however it arises, so long as we in good faith can reduce the obligation to a definite amount." (Emphasis added.)

■ An instrument will be most strongly construed against the party who prepared it. (*Bankier v. First Federal Savings & Loan Association* (1992), 225 Ill. App. 3d 864, 870, 588 N.E.2d 391, 395.) The bank rules and regulations and time deposit agreement clearly indicate their terms, which allow a setoff only to apply to "this account." The signature card reflects account No. 01-580205-60, which corresponds to CD No. 56158. Accordingly, construing these documents most strongly against defendant, we hold it only had a contractual right to set off the amount represented by CD No. 56158, namely, $44,318.25. Accord *Selby v. DuQuoin State Bank* (1991), 223 Ill. App. 3d 104, 109, 584 N.E.2d 1055, 1058.

The question remains as to whether defendant had the right to set off the remaining funds represented by the remaining six CDs. There are two bases on which defendant could assert a right of setoff and a third on which the trial court held defendant had such a right.

### A. *Common Law Right to Set Off*

■ Under common law, a bank has the power to apply the deposit to the payment of such depositor's indebtedness only when there are mutual demands and debts between the parties, and this right of setoff arises at the time the depositor's indebtedness to the bank has matured. (*Selby*, 223 Ill. App. 3d at 107, 584 N.E.2d at 1057.) The general rule in Illinois is that a bank may apply its depositor's account for a debt he owes to the bank. The application of the deposit, which is called a setoff, is only proper when the debts are mutual between the parties. (*First National Bank v. Lewis* (1989), 186 Ill. App. 3d 16, 19, 542 N.E.2d 124, 126.) A bank has a right of setoff, as against a deposit, only when the individual who is both depositor and debtor stands in both of these characters alike, in precisely the same relation and on precisely the same footing toward the bank. *International Bank v. Jones* (1887), 119 Ill. 407, 9 N.E. 885.

Defendant concedes it had no common law right to set off these funds because of a lack of mutuality between the parties. The CDs were held by plaintiff and her three sons while the debt was only that of Henry and Michael. Accordingly, there is no mutuality between the

parties, thereby depriving the bank of a common law right to set off. See *Selby*, 223 Ill. App. 3d at 108, 584 N.E.2d at 1057-58.

## B. *Contractual Right to Set Off*

■ As evidenced by our previous discussion, parties can contractually agree to a right to set off. However, as we noted, the contractual agreement to the right of setoff of defendant only applied to CD No. 56158. Thus, as to the remaining CDs, the only contract is each CD itself, and none contain language giving defendant a right to set off.

The affidavit of Leslie N. Cheatle, president of defendant, indicates that defendant had a procedural rule which required depositors to execute a time deposit agreement and signature card concurrently with the time deposit. However, in the event the customer or customers made subsequent time deposits in the same name as the original deposit, no additional time deposit agreement or signature card was required. When subsequent time deposits are made by the same customer or customers in the names appearing on the first time deposit, the terms of the existing time deposit agreement are orally communicated to the customer and they are told that the existing time deposit agreement and signature card will apply to subsequent time deposits. However, in her affidavit, plaintiff alleged she was never told that the signature card would apply to future deposits with defendant.

We view each CD as separate evidence of indebtedness from defendant to the payees. The rules of the bank give details regarding checking and savings accounts; they do not mention CDs. Thus, we find these rules inapplicable to the remaining CDs.

## C. *Statutory Right of Setoff*

■ The trial court specifically found defendant had a statutory right to set off these funds. Plaintiff contends this holding was in error. We agree. This statutory right is presumably based on section 2(a) of the Act:

"When a deposit in any bank or trust company transacting business in this State has been made or shall hereafter be made in the names of two or more persons payable to them when the account is opened or thereafter, such deposit or any part thereof or any interest or dividend thereon may be paid to any one of said persons whether the other or others be living or not, and when an agreement permitting such payment is signed by all said persons at the time the account is opened or thereaf-

ter the receipt or acquittance of the person so paid shall be valid and sufficient discharge from all parties to the bank for any payments so made." Ill. Rev. Stat. 1989, ch. 76, par. 2(a).

The court in *Selby* relied on this section and stated: "Thus, both Illinois law and the depositors' contract with the Bank imply an intent that each depositor be treated as owner of the entire interest in the account." *Selby*, 223 Ill. App. 3d at 109, 584 N.E.2d at 1058.

Essentially, defendant argues that because these CDs were held in joint tenancy with the right of survivorship, under this statute, payment to one depositor discharges the bank's duty as to all others to the extent of the payment. Since two of the depositors were in default on the loan to the bank for sums in excess of the balance of the time deposits, defendant contends it had the right to set off such indebtedness against the time deposits by virtue of the statute.

Section 2(a) of the Act does not provide a statutory right to setoff. Rather, that section merely clarifies ownership of joint checking accounts and establishes who is entitled to withdraw funds from those kinds of accounts. This section also serves to protect financial institutions from legal action by one joint tenant when another withdraws all the funds.

In conclusion, there is no basis to support defendant's actions in setting off the remaining CDs. Thus, the trial court erred in granting summary judgment in defendant's favor as to the remaining six CDs.

We affirm that part of the trial court's order granting summary judgment in favor of defendant as to CD No. 56158; we reverse summary judgment as to the other CDs and enter judgment in favor of plaintiff on those CDs; and we remand this cause in order for the trial court to determine what part of the $129,596.84 which was offset is attributable to CD No. 56158 and the exact amount due plaintiff from defendant.

Affirmed in part; reversed in part; and cause remanded with directions.

KNECHT, J., concurs.

JUSTICE LUND, specially concurring:

I concur with Justice McCullough's excellent opinion. The majority of opinions addressing this issue have held no mutuality, no setoff, absent a specific contract to the contrary. (Annot., *Bank's Right of Setoff, Based on Debt of One Depositor, Against Funds in Account Standing in Names of Debtor and Another*, 68 A.L.R.3d 192 (1976); 10 Am. Jur. 2d *Banks* §667 (1963).) The equity is clear. Why should an

unsuspecting investor lose funds because of some unknown and screwy minority court ruling? These joint investments with survivorship provisions are often made to avoid probate. The possibility of losing the funds because of another's debt problems is the furthest thing from the investor's thoughts.

Who has, or should have, the expertise? The financial institution, of course. If institutions want to further secure a debt, let them do it by specific agreements, in writing, or by obtaining assignment of the CDs. If financial institutions lack the sophistication to secure loans by up-front agreements, tough luck. There is no need for the courts to reward sloppy banking practices.

In this case, I find the bank's actions reprehensible. First, I ask how many investors in CDs ever read the deposit cards they sign? How many know what the setoff clause means? The tax identification number on each of the CDs in this case belonged to the plaintiff, and the added names were those of her children. To assume plaintiff should have been aware of setoff as to all of the CDs is ludicrous. On remand, perhaps judgment should be entered against the defendant for plaintiff's attorney fees and costs incurred, both in the circuit and appellate courts.