PETER PAPPAS, Plaintiff-Appellant, v. DONALD WALDRON, Indiv. and d/b/a Northgate Amusement Company, Defendants-Appellees.

Fourth District    No. 4—00—0848

Argued March 20, 2001.—Opinion filed July 6, 2001.

MYERSCOUGH, J., dissenting.

Duane D. Young (argued), of LaBarre & Young, of Springfield, for appellant.

Thomas C. Pavlik, Jr. (argued), of Delano Law Offices, P.C., of Springfield, for appellees.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, Peter Pappas, filed a declaratory judgment action against defendants, Don Waldron, individually and doing business as Northgate Amusement Company. Plaintiff alleged defendants triggered a 90-day option-to-buy period in a lease agreement plaintiff had executed with Joseph Vono, who is not a party to this lawsuit. Defendants claimed the 90-day option period was not triggered. Both parties filed motions for summary judgment and the trial court granted defendants' motion. Plaintiff did not receive a copy of the judge's ruling because the circuit clerk failed to mail copies of the docket entry to the parties, and, therefore, plaintiff failed to file a timely notice of appeal. Plaintiff appeals the trial court's ruling granting defendants' motion for summary judgment. We dismiss the appeal.

## I. BACKGROUND

Plaintiff Peter Pappas entered into a lease agreement with Joseph Vono, whereby Vono agreed to lease Pappas' bar and restaurant. Originally, Vono was unable to acquire financing to purchase Pappas' property, so the parties agreed to a five-year lease with an option to purchase with written notice during the last 90 days of each one-year period.

During negotiations for the lease, Vono mentioned to plaintiff he might borrow money from defendant, Don Waldron, for a down payment to purchase plaintiff's property. Plaintiff did not desire to do any business with defendant Waldron and insisted if defendant Waldron became involved in the purchase of his property, he (defendant Waldron) would have to pay for the property in full. To evidence his intentions, plaintiff's attorney drafted a paragraph into the lease agreement giving defendant Waldron a 90-day option to buy plaintiff's property if certain conditions occurred, and if defendant Waldron did not exercise the option, he would lose any future rights to the property. Defendant Waldron was not a party to the lease agreement, but he did sign the lease as "approved."

After plaintiff Pappas and Vono entered into the lease, defendant Waldron loaned money to Vono and, sometime thereafter, Vono assigned the lease to defendants. Plaintiff Pappas believed this assignment triggered the 90-day option-to-buy period and filed an action seeking declaratory judgment, asking the court to find (1) defendants had a contractual right to exercise the option to purchase as outlined in paragraph six of the lease, for a 90-day period after defendants gained a lien or claim to the leased property; (2) defendants failed to timely exercise their rights in accordance with the terms of the lease; and (3) the option to purchase had expired.

Defendants filed a motion to dismiss, which the trial court granted because plaintiff failed to allege a condition precedent to the option. Plaintiff filed an amended complaint, and defendants again filed a motion to dismiss. The trial court denied defendants' second motion to dismiss, finding plaintiff alleged a circumstance triggering the option, and the existence of the circumstance was an issue of proof.

Defendants and plaintiff both filed motions for summary judgment. The trial court heard arguments on April 14, 2000. The court granted defendants' motion, finding no material question of fact on whether defendants had "not claimed a lien on any part of the business premises." Accordingly, the trial court denied plaintiff's motion and entered judgment in favor of defendants.

The record is unclear as to whether the trial court ruled on the motion in open court in the presence of the attorneys or took the matter under advisement and ruled later. Plaintiff asserts the judge took the matter under advisement and did not rule in open court. Defendants do not address this issue in their brief and we do not have a transcript of the proceedings to consult. The April 14 docket entry reads:

> "This cause comes on for consideration on the [m]otion for [s]ummary [j]udgment filed by each party. Both parties are present by counsel. Arguments heard. Judgment is entered for defendant. There exists no material question of fact that [d]efendant has not claimed a lien on any part of the premises. The lack of a demand or claim of a lien precludes the commencement of the 90-day option period. THE CLERK IS DIRECTED TO SEND A COPY OF THIS DOCKET ENTRY TO MR. PAVLIK AND MR. YOUNG. CAUSE STRICKEN."

The clerk did not send copies of the docket entry to either party. Plaintiff's attorney did not follow up on the case until more than 30 days after entry of the final judgment. This time lapse arguably precludes a timely filing of a notice of appeal as required by Supreme Court Rule 303(a)(1) (155 Ill. 2d R. 303(a)(1)). On July 25, 2000,

plaintiff filed a motion to expand the docket entry and for other relief regarding the entry of a final judgment. Plaintiff sought to expand the docket entry to reflect the April 14, 2000, matter was taken under advisement and was not ruled upon in open court. Plaintiff also requested the April 14, 2000, docket entry be reentered because "due process of law requires notice and the opportunity to exercise rights attendant to the entry of a final judgment."

On September 14, 2000, the trial judge heard arguments and on September 19, 2000, denied plaintiff's motion. The September 19, 2000, docket entry reads as follows:

> "Cause comes on for consideration on [p]laintiff's [m]otion for [r]elief. Both parties are present by counsel. While the court did not announce at the conclusion of the hearing that it would mail an order to the parties, that was and is certainly the usual practice of the [c]ourt. The record further shows that the court ordered the [c]lerk to mail the [o]rder to the parties and that the [c]lerk failed to do so. The [c]ourt finds that the facts here are not so squarely on point with *Graves v. Pontiac Firefighters['] Pension [Board*, 281 Ill. App. 3d 508, 667 N.E.2d 136 (1996)] to distinguish this action from *Mitchell v. Fiat-Allis, Inc.*[, 158 Ill. 2d 143, 632 N.E.2d 1010 (1994)]. While justice, equity, fairness, and the preservation of due process favor the [p]laintiff, the [c]ourt believes it is bound by *Mitchell*. The motion is denied. THE CLERK IS DIRECTED TO MAIL THIS ORDER TO COUNSEL OF RECORD." (Emphasis in original.)

This appeal followed.

## II. ANALYSIS

Plaintiff appeals, arguing (1) this court has jurisdiction to hear this appeal; and (2) the trial court erred when it granted defendants' motion for summary judgment. We find the clerk's failure to mail a copy of the docket entry does not excuse plaintiff's late filing of his notice of appeal, and the appeal should be dismissed.

### A. Jurisdiction

Defendants contend we do not have jurisdiction to hear this appeal because plaintiff failed to comply with Supreme Court Rule 303. We agree.

●1 Supreme Court Rule 303(a)(1) (155 Ill. 2d R. 303(a)(1)) provides the notice of appeal from final judgments in civil cases "must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from."

Plaintiff contends because the circuit clerk failed to mail copies of the docket entry, the late filing of his notice of appeal should be

excused. The Illinois Supreme Court is clear on this issue: the fact an attorney does not receive actual notice of a trial court's order or ruling, "even if caused by clerical oversight, does not excuse counsel's failure to monitor his case closely enough to become aware that the circuit court had ruled." *Mitchell*, 158 Ill. 2d at 151, 632 N.E.2d at 1013.

In *Mitchell*, the trial court held a hearing on a complaint for administrative review of an Industrial Commission decision and took the matter under advisement on January 10, 1991. On February 7, 1991, the court signed an order setting aside the Industrial Commission's decision. This order also directed the circuit clerk to send notice of the judgment to all parties, but the clerk failed to mail the notice.

On April 25, 1991, plaintiff's attorney learned of the trial court's decision. The trial judge suggested plaintiff's counsel should file a motion to vacate, which the trial court ultimately granted, and then reentered the same order. This allowed plaintiff to timely file a notice of appeal. Defendant argued the appellate court lacked jurisdiction because more than 30 days had elapsed since the circuit court entered its final order. The appellate court ruled jurisdiction would be upheld on grounds of equity, because plaintiff's counsel relied on the circuit court's incorrect directive to file a motion to vacate to correct the circuit clerk's error of not mailing notice of the trial court's ruling.

The supreme court understood the concern the appellate court expressed but nevertheless stated "neither the trial court nor the appellate court has the 'authority to excuse compliance with the filing requirements of the supreme court rules governing appeals.' " *Mitchell*, 158 Ill. 2d at 150, 632 N.E.2d at 1012, quoting *In re Smith*, 80 Ill. App. 3d 380, 382, 399 N.E.2d 701, 702 (1980). Furthermore, the court stated "[i]mplementation of Rule 303 requires attorneys to monitor their cases to insure that appeals are timely filed." *Mitchell*, 158 Ill. 2d at 150, 632 N.E.2d at 1013.

In *Mitchell*, the supreme court discussed its holding in a similar case, where one party did not receive notice of the trial court's order through the mail and, as a result, failed to file a timely notice of appeal: " 'actual notice is not required, so long as the order appealed from was expressed publicly, in words and at the situs of the proceeding.' " *Mitchell*, 158 Ill. 2d at 148, 632 N.E.2d at 1012, quoting *Granite City Lodge No. 272, Loyal Order of the Moose v. City of Granite City*, 141 Ill. 2d 122, 123, 565 N.E.2d 929, 929 (1990). In the present case, the trial judge's ruling was expressed publicly, in words, and at the courthouse where the proceeding occurred.

●2 Plaintiff, however, contends the present case is controlled by *Graves*, 281 Ill. App. 3d 508, 667 N.E.2d 136. In *Graves*, we excused a

late filing of a notice of appeal where the parties did not receive notice of the trial court's order. However, in *Graves*, the trial court *expressly* entered an order stating the case was taken under advisement and the court would rule by mail. *Graves*, 281 Ill. App. 3d at 516, 667 N.E.2d at 141. In the present case, the trial court never entered such an order or told the parties it would rule by mail, nor does the record show the trial court took the matter under advisement. In fact, the trial court denied plaintiff's motion to expand the April 14, 2000, docket entry to include plaintiff's assertion the trial judge took the matter under advisement. The trial court merely stated, after the fact, it was the usual practice of the court to send copies of the docket entry to the parties.

●3 Plaintiff next urges us to find his reliance on the court's "standard operating procedures" to mail notice was sufficient, under principles of equity, to excuse the late filing of his notice of appeal. Plaintiff cites *Comdisco, Inc. v. Dun & Bradstreet Corp.*, 306 Ill. App. 3d 197, 202, 713 N.E.2d 698, 701 (1999), in which the First District held the trial court's failure to follow its standard operating procedure in mailing its final judgment to the parties warranted an equitable tolling of the time for filing an appeal.

We decline to extend *Comdisco* to the present case. The trial judge in *Comdisco* expressly found plaintiff relied on the court's standard operating procedure. *Comdisco*, 306 Ill. App. 3d at 202, 713 N.E.2d at 700. The record before us fails to show plaintiff's failure to timely file his notice of appeal was due to his reliance on the court's standard operating procedure as opposed to his failure to monitor his case. The trial judge indicated it was his usual practice to mail notice to the parties, but he did not indicate plaintiff's failure to timely file his notice of appeal was the direct result of the court not following its usual practice. Also, plaintiff never indicated he called the courthouse, checked the docket entry, or followed up on his case in any other way, in the more than three months that elapsed between the April 14, 2000, docket entry and his July 25, 2000, motion to expand docket entry. The docket entry was recorded publicly, in words, at the courthouse on the same day the proceeding was held. Had plaintiff properly monitored his case, we would not be addressing this issue today.

Further, we find *Comdisco* erodes the supreme court's holding in *Mitchell*, which was based on the premise an attorney has a professional responsibility to monitor his or her cases and failure to do so could lead to harsh results. *Graves* carves an exception for parties who specifically rely on a trial judge's order he or she will rule by mail. *Comdisco* widens this exception to the point where *Mitchell* is rendered virtually meaningless. *Comdisco* essentially means if notice is usually

sent through the mail, parties are excused from monitoring their cases and the 30-day rule will be extended if notice is allegedly not mailed. This not only contradicts *Mitchell*, but it opens the door for a myriad of other excuses to be carved out of the "standard operating procedure" exception. Even though results under *Mitchell* may be harsh, it provides a bright-line rule to encourage attorneys to monitor their cases and guards against abuse.

We find *Mitchell* controls the present case, and the circuit clerk's failure to mail copies of the April 14, 2000, docket entry to the plaintiff does not excuse his untimely filing of a notice of appeal.

### B. Motion for Summary Judgment

Plaintiff contends the trial court improperly granted defendants' motion for summary judgment because there is a genuine issue of material fact as to whether the option period as described in paragraph six of the lease was triggered when Vono assigned the lease to defendants. We disagree.

●4 The standard of review in cases involving summary judgment is *de novo*. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349, 701 N.E.2d 493, 496 (1998). Summary judgment should be granted only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1998).

Defendants contend Vono's assignment of the lease to them does not trigger the 90-day option period because they did not "demand or claim a lien," as required by the contract language. Plaintiff contends defendants acquired "some sort of an interest" in the property when the lease was assigned to Waldron, thereby triggering the 90-day option period.

The trial court found there was "no material question of fact that [defendants have] not claimed a lien on any part of the premises. The lack of a demand or claim of a lien precludes the commencement of the 90-day option period." Plaintiff contends the trial court erred because "it is very clear that the paragraph reads more generously in terms of the [defendants] obtaining some sort of an interest in the [p]laintiff's property entitling [them] to some sort of rights." Plaintiff contends the use of certain language in the second sentence of paragraph six renders the paragraph ambiguous and urges us to consider extrinsic evidence to determine his intent in including the financing option in the lease.

●5 The basic rule of contract interpretation, commonly known as the "four-corners rule," requires the following: " '[a]n agreement,

when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence.' " *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462, 706 N.E.2d 882, 884 (1999), quoting *Western Illinois Oil Co. v. Thompson*, 26 Ill. 2d 287, 291, 186 N.E.2d 285, 287 (1962).

Courts use several guidelines to apply the four-corners rule. First, they look to the language of the contract alone. If the language of the contract is unambiguous, the contract is interpreted as a matter of law without the aid of parol evidence. If, however, the language of the contract is open to more than one meaning, an ambiguity is present and only then may parol evidence be used to help resolve the ambiguity. *Air Safety*, 185 Ill. 2d at 462-63, 706 N.E.2d at 884.

The contract language in question is found in paragraph six, which is entitled "Financing Option of Lessee":

> "The [l]essee may seek financing help from Don Waldron, doing business as Northgate Amusement Co., or with a corporation or business in which Don Waldron has an interest. In the event that the [l]essee becomes indebted to said Don Waldron or any such corporation or business, and Don Waldron or any such business *demands or claims a lien* on any of the premises or equipment herein, Don Waldron or any such business will have the option to purchase the premises and property herein for the total balance due on this [l]ease and [o]ption to [p]urchase, on ninety (90) days written notice to [l]essor after asserting said *lien or claim*. Failure of Don Waldron or any such business to exercise said option shall terminate any rights or claims of Don Waldron or any corporation or business in which he has an interest. Endorsement of this [l]ease by Don Waldron will be an acceptance of the terms herein." (Emphasis added.)

●6 According to the contract, two conditions must occur before defendants trigger the 90-day option period: (1) Vono must be indebted to defendants, and (2) defendants must demand or claim a lien on the property or equipment subject to the lease. Without question, Vono became indebted to defendants and defendants did not demand or claim a lien against the premises or property. Defendants, therefore, argue they have not triggered the 90-day option period. Plaintiff, however, contends the phrase "demands or claims a lien" is inconsistent with the words "said lien or claim," which occur later in the same sentence.

Plaintiff submitted two affidavits along with his brief, one from himself and the other from the attorney who prepared the lease contract for him. These affidavits state plaintiff's intent was never to

do business with defendant Waldron, and paragraph six was included in the lease to insure if defendant Waldron ever acquired *any* interest in the property, defendant Waldron would have to pay for the property in full or lose any future interest to the property. According to plaintiff, when Vono assigned the lease, defendant Waldron acquired "some sort of interest" in the property, which, under paragraph six of the lease, triggered the 90-day option period.

We find the contract language is clear and unambiguous. The "said lien or claim" language simply refers to the "demands or claims a lien" language occurring earlier in the sentence. Two definitions of "lien" in Black's Law Dictionary refer to a "lien" as a "claim": "[a] claim, encumbrance, or charge on property for payment of some debt, obligation or duty"; and "[r]ight or claim against some interest in property created by law as an incident of contract." Black's Law Dictionary 922 (6th ed. 1990). Therefore, if one "claims a lien" on property, it would be proper to refer to the lien as either a "claim" *or* a "lien," and this explains the use of "said claim or lien" near the end of the second sentence of paragraph six. The language of paragraph six is clear and unambiguous, and, accordingly, we will interpret the paragraph without reference to extrinsic evidence.

Further, we will not consider extrinsic evidence because the contract contains an integration clause: "This [a]greement constitutes the entire agreement between the parties relating to the subject matter hereof, superseding all prior agreements, and may be modified only by a written instrument executed by all parties." The supreme court has stated, "where parties formally include an integration clause in their contract, they are explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence." *Air Safety*, 185 Ill. 2d at 464, 706 N.E.2d at 885.

Plaintiff goes to great lengths to persuade us paragraph six reads very generously, and the language "said lien or claim" means a "claim," in addition to a "lien," could trigger the 90-day option. Plaintiff further asserts the assignment of the lease resulted in defendant Waldron acquiring a "claim" to the property. However, plaintiff provides no authority supporting the proposition an assignment of a lease may be considered a "claim" against property, and our research rendered no such authority.

Even if we were to construe paragraph six to mean defendants' demand of a lien *or* claim would trigger the 90-day option period, the assignment of a lease cannot be considered a claim against property. A "claim" is generally defined as "[a] cause of action," a "[d]emand for money or property as of right," or a "[r]ight to payment." Black's Law Dictionary 247 (6th ed. 1990). When Vono assigned the lease, de-

fendant Waldron became lessee and actually acquired a contractual duty to *pay* plaintiff rent. Even in the broadest sense of the word, defendants never acquired a "claim" against plaintiff's property when Vono assigned the lease to them.

Paragraph six is clear and unambiguous and its meaning can be gleaned from the language of the contract alone. Even if the contract is interpreted broadly to include plaintiff's proposition a "claim" could trigger the 90-day option period, defendants never acquired a "claim" against plaintiff's property. We also note plaintiff's attorney drafted the contract, and as such, it should be interpreted against him. *Symanski v. First National Bank*, 242 Ill. App. 3d 391, 396, 609 N.E.2d 989, 992 (1993). Plaintiff could easily have written paragraph six of the lease to include an assignment of the lease as a trigger to the 90-day option period if such was his intent. He did not. Accordingly, the trial court properly granted defendants' motion for summary judgment.

## III. CONCLUSION

Plaintiff failed to timely file a notice of appeal within 30 days after entry of final judgment, and, therefore, we dismiss the appeal.

Appeal dismissed.

COOK, J., concurs.

JUSTICE MYERSCOUGH, dissenting:

I respectfully dissent and request that the supreme court revisit *Mitchell*, a case in which I was the trial court judge. In neither the case at bar nor *Mitchell* could the appellants have accurately monitored their cases given the multitude of mistakes in the circuit clerk's office. Where these ministerial errors occur, trial courts should be able to correct those errors.

The mistake here, as in *Mitchell*, was actually the fault of the circuit clerk. The only way counsel could have accurately monitored this case was to constantly, even daily, initiate *ex parte* communications with the judge or, perhaps, his or her court reporter or secretary, if he is fortunate enough to have one. Such communication is certainly undesirable. Attempts to monitor the case through the circuit clerk's office, in the face of obvious malfeasance, would be futile, as well as nearly physically impossible, given the traffic in our overworked, understaffed, underpaid clerks' offices.

Moreover, in *Mitchell*, monitoring the case through the clerk's office would not have uncovered entry of the order because it was not

entered in the docket sheet or the file but had been misplaced by the clerk. The clerk was, in fact, unable for a period of time to find the order I requested. In response to the *Mitchell* situation, the circuit clerk in Sangamon County established a system to ensure that docket entries and orders were sent out as ordered. This system required the circuit clerk to file and certify a written proof of service each time that a docket entry or order is sent out by mail as the trial court ordered.

This was the practice followed in the case at bar on at least three occasions, two prior to April 14, 2000, and one following April 14, 2000, and was relied upon by the attorneys of record:

"PETER PAPPAS
  VS           99 MR 000273
DONALD WALDRON
      PROOF OF SERVICE
The undersigned certifies that service of the foregoing, together with a copy of the 9-15-99 docket referred to herein, was made by enclosing a true copy thereof in an envelope plainly addressed to:
  Atty Duane Young
  1330 S. 8th St.
  Ste. 2
  Spfld, Illinois
    62703
and depositing the same in the U.S. Mail postage pre-paid on the 16th day of Sept[.], 1999.
        Anthony P. Libri
        Circuit Clerk
        B
        Deputy Clerk
([stamped] FILED Sep[t.] 16[,] 1999 CIV.-7 Anthony P. Libri[,] Jr.[,] Clerk of the Circuit Court

[certified] SEAL [of the] 7th JUDICIAL CIRCUIT COURT * SANGAMON CO., ILL *)"

"PETER PAPPAS
  VS           99 MR 000273
DONALD WALDRON
      PROOF OF SERVICE
The undersigned certifies that service of the foregoing, together with a copy of the docket 10-26-99 referred to herein, was made by enclosing a true copy thereof in an envelope plainly addressed to:

DUANE D[.] YOUNG
LABARRE, YOUNG & DIETRICH
1330 S. 8TH ST[.], SUITE 2
SPRINGFIELD[,] IL 62703

THOMAS C[.] PAVLIK
1 SE OLD STATE CAPITOL
SPRINGFIELD[,] IL 62701

and depositing the same in the U.S. Mail postage pre-paid on the 27th day of Oct[.] 1999.

Anthony P[.] Libri
Circuit Clerk

B
Deputy Clerk

([stamped] FILED Oct[.] 27[,] 1999 CIV.-7 Anthony P. Libri[,] Jr.[,] Clerk of the Circuit Court

[certified] SEAL [of the] 7th JUDICIAL CIRCUIT COURT * SANGAMON CO., ILL *)"

"PETER PAPPAS
          VS                              99 MR 000273
DONALD WALDRON

PROOF OF SERVICE

The undersigned certifies that service of the foregoing, together with a copy of the docket 9-19-00 referred to herein, was made by enclosing a true copy thereof in an envelope plainly addressed to:

DUANE D[.] YOUNG
LABARRE, YOUNG & DIETRICH
1330 S. 8TH ST[.], SUITE 2
SPRINGFIELD[,] IL 62703

THOMAS C[.] PAVLIK
1 SE OLD STATE CAPITOL
SPRINGFIELD[,] IL 62701

and depositing the same in the U.S. Mail postage pre-paid on the 27th day of Oct[.] 1999.

Anthony P[.] Libri
Circuit Clerk

il
Deputy Clerk
([stamped] FILED Oct[.] 27[,] 1999 CIV.-7 Anthony P. Libri[,] Jr.[,] Clerk of the Circuit Court

[certified] SEAL [of the] 7th JUDICIAL CIRCUIT COURT * SANGAMON CO., ILL *)"

Unfortunately, on the critical occasion, April 14, 2000, the clerk failed to mail the trial court's docket entry awarding summary judgment, although the clerk did enter a docket entry in the court file at the judge's direction to strike the cause of action. The docket entry stated:

"4/14/2000 DOCKET D Judge: APPLETON, THOMAS R. Rep: FITZGERALD[,] MARY

This cause comes on for consideration on the Motion for Summary Judgment filed by each party. Both parties are present by counsel. Arguments heard. Judgment is entered for [d]efendant. There exists no material question of fact that [d]efendant has not claimed a lien on any part of the business premises. The lack of a demand or claim of a lien precludes the commencement of the 90-day option period. THE CLERK IS DIRECTED TO SEND A COPY OF THIS DOCKET ENTRY TO MR. PAVLIK AND MR. YOUNG. CAUSE STRICKEN."

The circuit clerk's entry stated:

"4/14/2000 Cause Stricken Signed Judge APPLETON THOMAS R. Status: Cause Stricken. Report: Terminated Apr[.] 14, 2000."

(Although this entry refers to the judge's signature, the record contains no docket entry or document bearing the judge's signature.)

The record, unfortunately, does not reflect whether or when the April 14, 2000, judgment order docket entry of Judge Thomas Appleton was placed in the court file or input into the clerk's computer. Neither is the record clear when this information was available to counsel in the court file or the clerk's computer. In fact, the docket entry itself, though dated April 14, 2000, does not indicate on what date and time the docket entry was actually placed in the computer or the court file. The fact that a court reporter enters a docket entry in his computer does not indicate whether the clerk's office transferred the docket entry to the case file or the clerk's computer contemporaneously or at a later date. Under such circumstances, where a judge takes a matter under advisement with the understanding that his or her ruling will be mailed to the parties at a later date by the clerk, and the judge

thereafter rules in his or her chambers and directs the clerk to mail the ruling to the parties, but the clerk fails to mail the ruling, the court has not expressed its order publicly, in words, at the situs of the proceeding as required. See *Granite City*, 141 Ill. 2d at 127, 565 N.E.2d at 931. While this trial court did not expressly state that it would rule by mail, the court practice was clearly to rule by mail. *Graves* should, therefore, control here. That is, since the order was never mailed to the parties or their attorneys, the order did not become final for purposes of appeal.

Moreover, the supreme court in *Mitchell* additionally stated:

> "The 'mistake' in the instant case was the belief of the circuit court and Mitchell's counsel that a motion to vacate the judgment order, more than 30 days after its entry, was a valid means by which the circuit court could reenter the same order and thereby start a new 30-day period in which to file notice of appeal." *Mitchell*, 158 Ill. 2d at 151, 632 N.E.2d at 1013.

Here, the court and counsel made no such "mistake," and for that reason, the court should be allowed to correct the clerical error.

The supreme court should follow the law prior to *Mitchell* that allowed courts to apply equitable principles to correct mistakes of ministerial officers (see *Cesena v. Du Page County*, 145 Ill. 2d 32, 38, 582 N.E.2d 177, 180 (1991)), and to excuse a litigant's mistaken reliance on a judge's erroneous direction (see *Needham v. White Laboratories, Inc.*, 639 F.2d 394, 398 (7th Cir. 1981)). However, the supreme court distinguished *Mitchell* from these cases, stating:

> "We do not believe, however, that the case at bar is analogous to the cases which employ equitable principles to correct ministerial mistakes." *Mitchell*, 158 Ill. 2d at 151, 632 N.E.2d at 1013.

*Mitchell* actually involved the very mistakes found in *Cesena* and *Needham*: (1) the clerk's mistake in failing to file and forward my decision and (2) the court's erroneous direction to file a motion to vacate the judgment order on the grounds of the clerical error. Clearly, *Mitchell* involved both the error of the ministerial officer, the clerk, and the judge's erroneous direction. The trial and appellate courts in *Mitchell*, therefore, should have been affirmed.

Alternatively, since the *Mitchell* court distinguished its facts from *Cesena* and *Needham*, indicating a difference between the case at issue there from the cases that employ equitable principles to correct ministerial mistakes, the court here can clearly reverse to correct the clerk's ministerial error, even relying on *Mitchell*.

For these reasons, I would reverse the trial court's judgment in this case.